332 P.2d 875

BOHEMIAN BREWERIES, a division of Atlantic Brewing Company, a corp., Plaintiff-Respondent,

v.

Earle E. KOEHLER, Commissioner of Law Enforcement of the State of Idaho, Defendant-Appellant.

No. 8597.

Supreme Court of Idaho.

Dec. 10, 1958.

Clemons, Skiles & Green, Boise, for respondent.

Graydon W. Smith, Atty. Gen., Wm. C. Roden, Edward J. Aschenbrener, Asst. Attys. Gen., for appellant.

KEETON, Chief Justice.

Bohemian Breweries, a division of Atlantic Brewing Company, a corporation, respondent, is a manufacturer and distributor of beer in the State of Idaho, and the holder of State Breweries License No. 1, issued to it pursuant to the provisions of Ch. 10, Title 23, I.C. The license authorizes the brewery to brew, distribute and sell beer, and it was, prior to the 17th day of July, 1957, and still is so engaged.

On or about the 17th day of July, 1957 defendant Earle E. Koehler, Commissioner of Law Enforcement, appellant here, caused to be served on the brewery a notice which advised it that the Commissioner had cause to believe that the brewery had violated the provisions of Ch. 10, Title 23, I.C., particularly Sec. 23–1013, subds. 9 and 5. The notice so served ordered the brewery to appear in the office of the Commissioner of Law Enforcement at the hour of ten a. m. August 2, 1957, and show cause why its license to manufacture and sell beer should not be suspended or revoked.

The alleged misconduct of the brewery concerning which the Commissioner complained is described by the brewery as an advertising scheme, and is referred to by it as the "cash caps" plan. The brewery affixed to each bottle of beer to be sold to retailers, a cap with the words on the cap "Bo's Cash Caps Worth Actual Cash". These caps were redeemable at 2¢ per cap for 12-ounce bottles of beer and 4¢ for quart bottles. Envelopes addressed to the brewery for mailing the caps to it were contained in the beer cartons. The beer so manufactured by the brewery was and is sold to a wholesale licensee, the wholesale licensee to a retail licensee, the retail licensee to the consumer. The purchaser from the retail licensee could place in the envelopes so furnished for that purpose 24 stubby caps or 12 quart bottle caps, mail the same to the brewery and receive a cash dividend of 50¢ for each 24 stubby caps or 12 quart caps. There was also distributed to said retail beer licensee a tag to be attached to the neck of Bohemian beer bottles in the establishment of the retail licensee on which was printed:

"Cash
Get 50¢ Dividend
With Bohemian Club
Cash Caps

"Get our check for 50¢—just mail a set of cash caps from 24 Stubby bottles or a set of cash caps from 12 Quart bottles of Bo! There's a handy self-addressed mailing envelope in each case or six-pack."

On the envelopes was printed, among other things: "Business Reply Envelope, First Class Permit No. 420" and

"Null and void if presented by any retail or wholesale licensee and their families—or anyone else to whom such redemption would be prohibited by liquor control laws of any governmental body".

Paragraphs IV and V of the notice to the brewery detailed the claimed violations, and read as follows:

"That said 'Cash Caps' so delivered by Bohemian Breweries, a division of the Atlantic Brewing Company, to said retail beer licensees hereinbefore mentioned in Paragraph III are and constitute valuable property in that the delivery by Bohemian Breweries, a division of the Atlantic Brewing Company, of said 'Cash Caps' to said retail licensees allows the retail beer licensee to give his customer property of the value of 2¢ per bottle cap in addition to the beer, which said 'Cash Caps' are given to said retail beer licensee without cost to said retail beer licensee; that said Bohemian Breweries, a division of the Atlantic Brewing Company, has not notified the Department of Law Enforcement of any increase or decrease in its posted price for the sale of beer and the posted price for the sale of beer by Bohemian Breweries, a division of the Atlantic Brewing Company, has not been changed to reflect the distribution of 'Cash Caps' to the retail beer licensee, all of which is contrary to the provisions of Section 23–1013(5) Idaho Code;

"That the delivery of said 'Cash Caps' by Bohemian Breweries, a division of Atlantic Brewing Company, to said retail beer licensees on July 2, 1957, to those persons mentioned in Paragraph III, constitutes and is in direct aid and assistance to a licensed beer retailer of property, said property not being a necessary incident of the sale of beer to said retail beer licensees, all of which acts of Bohemian Breweries, a division of the Atlantic Brewing Company, hereinbefore described, in paragraphs I through V, inclusive, are in violation of the laws of the State of Idaho, to-wit, Section 23–1013(9), Idaho Code, and Section 23–1013(5), Idaho Code;"

The brewery, prior to engaging in such cash cap plan, consulted appellant relative to the legality of the plan. The Director of the Liquor Law Enforcement requested an opinion from the Department and was advised by its attorney:

"It is our understanding also that no person or persons holding a retail or wholesale beer license issued by the State of Idaho would be eligible to participate in this promotion.

"It is our opinion that under the Idaho statutes relating to regulation and control of the sale of beer, the proposed plan would not be in violation of any such statutes. This, of course, is subject to the restriction that the brewery may not in any way give directly or indirectly financial assistance to the retailer. However, the proposed plan would appear to prevent such aid or assistance."

. While this opinion of the attorney would not be controlling or binding on the courts, it establishes that the brewery was acting in good faith and had no intention of violating any statute regulating the manufacture or sale of beer.'*

`On June 17, 1957, at the suggestion and request of the Commissioner, the brewery was advised that the use of the tags above described on the bottles was in violation of law and their use by the brewery was immediately discontinued, and retailers of beer holding the tags were instructed to remove the same from the beer bottles or containers.

Shortly after receiving the notice above described and prior to the time fixed by the Commissioner for the hearing the brewery brought this action to enjoin and restrain the Commissioner from revoking or suspending the license of the brewery to do business in the State. The complaint gave a detailed description of the "cash caps plan" and alleged that the acts claimed by the Commissioner to be a violation of law, were in all things legal, and admitting the facts alleged in the notice to be true, constitute no cause for suspension or revocation of the brewery's license.

To the complaint so filed the Commissioner filed a general and special demurrer, claiming, among other things, that the facts alleged were insufficient to constitute a cause of action, that the district court had no jurisdiction of the defendant or the subject matter of the action, also, misjoinder of parties; and that the complaint is unintelligible, ambiguous and uncertain in certain claimed particulars.

The trial court, on a showing made, issued a temporary injunction directed against the Commissioner, restraining him from revoking or suspending the license of the brewery. Thereafter the court overruled the demurrer of appellant. Appellant refused to plead further and the court entered `judgment permanently enjoining and restraining the Commissioner from revoking or suspending the license of the brewery because of anything alleged in the Commissioner's order directed to the brewery to show cause. From this final order the Commissioner appealed.

In assignments of error appellant contends that the complaint fails to state a

cause of action; that the court has no jurisdiction of the subject matter and that the cash caps plan as outlined in the complaint is in violation of Sec. 23–1013(9) I.C.

In argument the appellant asserts that before the action can be entertained by the district court there should be a showing that administrative remedies have been exhausted; that until such administrative remedies have been exhausted the court has no jurisdiction; that this particular proceeding in the district court is unauthorized and the complaint shows on its face that the brewery violated the laws covering the manufacture and sale of beer.

We shall first address our attention to the contention that the complaint shows on its face that the brewery violated the law. The section under which the Commissioner is proceeding, Sec. 23–1013(9) I.C., provides in part:

"It shall be unlawful for any dealer, brewer or wholesaler, or any person financially interested, directly or indirectly, in such business, whether resident or nonresident, to have any financial interest, direct or indirect, in any licensed retailer's business, or to own or control any property upon which a licensed retailer conducts his business, except such property as shall have been so owned or controlled continuously for more than one year prior to the effective date of this act; or to directly or indirectly aid or assist any licensed retailer by gifts, loans of money, property of any description, or services of any nature, or by the giving of premiums or rebates; or to furnish, rent, lend or sell to any licensed retailer any equipment, fixtures or supplies, * * *"

Therefore the question presented is did the brewery have any financial interest, directly or indirectly, in any licensed retailer's business, or did it own or control any property upon which a licensed retailer conducts his business, or did the brewery, directly or indirectly, aid or assist any licensed retailer by gifts, loans of money, property of any description, or services, or give premiums or rebates to such licensed retailers, or do any other act expressly prohibited by said statute.

The matters complained of by the Commissioner are, first: failure to notify the Department of any increase or decrease in its posted prices, and the posted price has not been changed to reflect the distribution of cash caps to the retail licensee; second: that the delivery of such cash caps to such licensed retailer constitutes assistance to a licensed beer retailer. The section 23–1013(5) requiring the posting of prices requires the price to be uniform as to the same class of buyers in the same trade area; all prices posted shall be adhered to and any departure or variation from the posted price shall be regarded and construed as giving financial assistance

within the meaning of the act. This section deals with the relationship between the brewery, wholesalers and retail licensees. Subdivision 7 of the section prohibits the sale or delivery of beer to a retail licensee except for cash, and no extension of credit shall be allowed.

■ The intent of subdivision 5 of the section is to prevent discrimination in the cost of beer to retailers. It sufficiently appears that the price of respondent's beer has not been changed and is sold at the same price to all licensees who buy it for retail sale. The section further prohibits a brewery from having any financial interest in a retail establishment, that is, the brewery must have no control over the retailer.

Respondent's cash caps plan does not give any control or advantage to one retail dealer over another. The beer is sold for the posted price to all alike. In the instant situation the brewery was engaged in the usual, customary and ordinary course of business.

The caps delivered through the wholesaler to the retailer and by him to the beer purchaser, were redeemable by the brewery only on presentation by the ultimate consumer. The wholesale or retail dealer, and members of their families were specifically prohibited from presenting the caps for redemption. No payment was made to the licensee.

The cash caps plan might increase the volume of sales or induce an increased number of buyers. Such, however, is the purpose of any advertising scheme, regardless of what media may be used for that purpose.

The redemption of the caps by the brewery from the consumer can in no sense be construed as reducing the price to the wholesaler or retailer. Except as the sales might be increased, the retailer received no profit whatsoever.

■ We are of the opinion that the cash cap advertising plan outlined in the complaint and in the notice given the brewery by the Commissioner are not a violation of the provisions of the statute which requires beer to be sold at the posted prices, and to all buyers without discrimination under the same circumstances. Nor did the advertising scheme give one retailer an advantage over the other. Nor did the brewery either directly or indirectly secure an interest in the wholesaler's or retailer's business, render financial assistance to, or own or control the retailer's business in any degree.

■ The purpose of the statute is to prevent a brewer from owning or controlling the retail outlet and gaining advantage or control of the industry. Such result would not follow the advertising plan here under attack.

The case of State ex rel. Nebraska Beer Wholesalers Ass'n v. Young, 153 Neb. 395, 44 N.W.2d 806, cited by appellant to sustain its position is not applicable to the facts here presented.

It follows that admitting the facts contained in the notice of the Commissioner to the brewery to be true, the Commissioner would have no authority, because of the existence of such facts, to revoke or suspend the license of the brewery.

Should the brewery have its license to manufacture and sell beer revoked or suspended by the Commissioner, it could only result in an appeal to the courts to have such decision reviewed.

▆▆ The contention that the district court had no jurisdiction; that administrative remedies of the brewery had not been exhausted before such resort to the courts was instituted, is not sustainable. While as a general rule administrative remedies should be exhausted before resort is had to the courts to challenge the validity of administrative acts, such rule is not absolute and will be departed from where the interests of justice so require, and the rule does not apply unless the administrative agency acts within its authority. 73 C.J.S. Public Administrative Bodies and Procedure § 173, p. 514. The rule applicable here is stated in 42 Am.Jur. 585, Sec. 200, as follows:

"The doctrine of exhaustion of administrative remedies affords no rigid rule applicable indiscriminately in each and every situation where a party resorting to a court has failed to exhaust an available administrative remedy, but is subject to some limitations which, however, are not susceptible of exact definition. One line of cases representing such a limitation on the doctrine turns on the nature of the defect urged by a party as ground for judicial relief from action, threatened or completed, by an administrative authority of first instance in the administrative machinery; another line of cases turns on the futility of exhausting the administrative remedy."

See also: Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772; Ogden City v. Armstrong, 168 U.S. 224, 18 S.Ct. 98, 42 L.Ed. 444.

▆ The threatened action of the Commissioner in this case would cause the brewery irreparable injury in loss of capital investment, money, business earnings and good will. It follows that in a case such as this, where the charge made by the administrative agency does not show a violation of any of the provisions of the law regulating the business of the plaintiff, and consequently does not state any grounds for the contemplated revocation or suspension of its license, a court of equity will interfere by injunction to protect the liti-

gant where it is made to appear that irreparable injury will result from further pursuit of the administrative process.

By reason of the facts stated, the Commissioner (administrative agency) would have no authority to revoke or suspend the license of the brewery and such attempted proceedings can be attacked in the manner here alleged.

█ The contention that the district court had no jurisdiction is likewise without merit. Under the provisions of Art. V, Sec. 20, Idaho Constitution, the district court has jurisdiction in all cases, both in law and in equity, and the equity jurisdiction is not limited to that delineated by statute, its jurisdiction being constitutionally created. Coleman v. Jaggers, 12 Idaho 125, 85 P. 894, Syl. 4 and 5; Fox v. Flynn, 27 Idaho 580, 150 P. 44; Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068; Clemens v. Kinsley, 72 Idaho 251, 239 P. 2d 266, Syl. 6 and 7; Gerlach v. Schultz, 72 Idaho 507, 244 P.2d 1095.

Under the facts presented, the brewery is entitled to an injunction as a matter of right to prevent a threatened act which would produce injury. Nielson v. Peterson, 37 Idaho 171, 215 P. 836.

The order appealed from is affirmed. Costs to respondent.

PORTER, TAYLOR, SMITH and Mc-QUADE, JJ., concur.