525 P.2d 848

**CITY OF ALBUQUERQUE, a municipal corporation, Plaintiff-Appellant,**

v.

**Henry V. CAMPOS, President, Joe Stevens, Secretary-Treasurer, Jim Swann, Business Agent, for the American Federation of State, County and Municipal Employees Local 624 of AFL–CIO, Defendants-Appellees.**

**CITY OF ALBUQUERQUE, a municipal corporation, Plaintiff-Appellant,**

v.

**Lt. Leonard ORTEGA, President, Ronald Piaz, Secretary-Treasurer, for American International Fire Fighters Local 1455, Defendants-Appellees.**

**No. 9901.**

Supreme Court of New Mexico.

Aug. 16, 1974.

Frank Horan, City Atty., Cornelius J. Finnen, Asst. City Atty., Albuquerque, Rodey, Dickason, Sloan, Akin & Robb, William A. Sloan, Duane C. Gilkey, William S. Dixon, Albuquerque, for appellant.

Branch, Dickson, Dubois & Wilson, Frank P. Dickson, Jr., Albuquerque, for appellees.

## OPINION

OMAN, Justice.

This is an appeal from a final decree entered by two district judges in two separate suits filed in the district court of the Second Judicial District by the City of Albuquerque against the officers and members of two labor unions. The cases were

not consolidated for trial, but, with the consent of the parties, were tried simultaneously and together with the two district judges presiding. The City sought an injunction and damages in each case.

The final decree from which this appeal has been taken was entered on September 26, 1973. In addition to ordering the dismissal of the amended complaint in each case, the decree recited, as a part of the decretal portion thereof:

"That the questions presented in the foregoing causes are of sufficient public importance to warrant a decision by the Supreme Court and are likely to recur."

These questions or issues, and the final decisions of the district judges thereon, were stated as follows in the decree:

1. "That the plaintiff may not maintain the present actions by reason of its failure to exhaust the administrative remedies provided in Sections 9 and 10 of Albuquerque City Ordinance No. 153–1971."

2. "That NMS 1953 Comp. § 59–2–1 [§ 59–2–1, N.M.S.A. 1953 (Repl. Vol. 9, pt. 1, 1960)] (commonly known as the little Norris-LaGuardia Act) is applicable to the present cause, notwithstanding the fact that the labor dispute referred to in the Complaint arises out of the employment by the City of Albuquerque, a municipal corporation of the State of New Mexico, of certain of its employees."

We reverse these decisions.

On July 30, 1973, those City employees, who were members of the two unions shown in the caption hereof, went on strike and established picket lines at City facilities. This strike resulted in a total stoppage of municipal services furnished by the City to its residents in the areas of fire protection, water line maintenance, emergency rescue service, refuse collection, traffic control maintenance, public transportation, and others.

On the same date the City filed the two suits asking injunctions and damages.

Consent orders were entered by which defendants were temporarily restrained from mass picketing and certain acts of obstruction and interference. On the following day, the City filed an amended complaint in each suit seeking preliminary injunctions whereby its striking employees would be commanded to cease their strike and return to their jobs. The district court thereupon issued an order commanding defendants to appear before the court the following day, August 1, 1973, and show cause why a preliminary injunction should not be entered as prayed for by the City.

Hearings were conducted on August 1 and 2, 1973. At a hearing on August 1, the parties were directed by the court to furnish written summaries of the evidence that they proposed to tender at the hearing to be held pursuant to said order to show cause. The City filed its "tender of evidence" pursuant thereto in open court on August 2 at the continuation of this show cause hearing. In this tender, it not only listed seven witnesses it intended to call, but summarized the evidence it anticipated to elicit from each.

At one of the hearings conducted on August 2, the court made a plea for the parties to settle without further action by the court; conducted a negotiation session, in the nature of a pre-trial conference; urged an agreement for partial restoration of municipal services on a voluntary basis during a "cooling-off period"; ultimately ruled from the bench that the City had to exhaust its administrative remedies under City Ordinance No. 153–1971; heard limited testimony from only one of the witnesses offered by the City; denied defendants the right to cross-examine this witness; and entered an interlocutory order in which, among other things, it was concluded or ordered:

1. "That the provision of the City Ordinance No. 153–1971 of the City of Albuquerque, being Section No. 9B(7) thereof prohibiting employees of the City of Albuquerque from striking is valid;"

2. "That the plaintiff may not maintain the present actions by reason of its failure to exhaust the administrative remedies·provided in Sections 9 and 10 of Ordinance No. 153–1971."

3. "That Section 59–2–1 [§ 59–2–1, N.M.S.A. 1953 (Repl. Vol. 9, pt. 1, 1960)], is applicable to the present proceeding and that no injunction could be issued with respect to the foregoing violations by the defendants of the City ordinance, in the absence of factual evidence showing compliance with said section, and having further found that the mere fact that there is an existing strike by the defendants constitutes an unlawful act under said ordinance;"

4. "That nevertheless the present cause should not be dismissed but should remain pending during the time necessary to satisfy said administrative requirements;"

5. "That pending the final disposition of this cause, the defendants be and they hereby are ordered to supply personnel for the municipal services beginning no later than midnight, Aug. 2, 1973 to the extent and in the manner shown ·in the following tabulation:

"A. *Fire protection*
Manning of three fire stations by five firemen per shift for each shift, the selection of the stations to be at the City's election;

"B. *Emergency Rescue Operations*
Three men for three shifts to operate one rescue unit, the location to be determined by the City.

"C. *Communications*
Two men for each shift to operate a communications center to be selected at the City's election.

"D. *Refuse collection*
Ten men per day for performing the most pressing refuse collection needs of the City at the election of the City.

"E. *Public Works*
Four men for maintenance of public works at the election of the City."

6. "That the defendants need not supply personnel for the following city functions: Vehicle maintenance, liquid waste, transportation; and that the request of the City that picket lines which have prevented the use of any of the bus transportation of the City of Albuquerque be, and the same hereby is, denied."

7. "With respect to the foregoing requirement of furnishing personnel, the City will notify the defendants as to the number of persons required for each location and position and which location and position should be served and the particular individuals to be supplied for each of the positions so determined shall be made by the defendants."

8. "That the tender of proof made by the plaintiff and summarized in their 'tender of evidence' on file herein be, and the same hereby is, denied."

9. "That this Interlocutory Order does not practically dispose of the merits of these causes."

10. "That this Interlocutory Order involves a controlling question of law as to which there is a substantial difference of opinion."

11. "That an immediate appeal from this Interlocutory Order may materially advance the ultimate termination of this litigation."

The schedule or "tabulation" of services to be supplied was of the district court's own making, and was unsupported by any evidence. The court described these as "emergency services" which were inadequate but essential to give minimal protection to the public.

Pursuant to the last three paragraphs above quoted from the interlocutory order of August 2, the City filed in this Court an Application for Order Allowing an Interlocutory Appeal as provided in § 21–10–3, N.M.S.A. 1953 (Repl. Vol. 4, 1970, Supp. 1973). During argument on this application, this Court was advised that the strike had been settled. On August 7 we dismissed the interlocutory appeal without prejudice to the rights of the parties to

prosecute an appeal from any final decrees to be entered by the district court. It is obvious from an unrefuted affidavit executed by a defendant in each case and filed on August 23 that the strike was settled.

As above stated, the final decree entered in the cases by the two presiding district judges was filed on September 26, 1973. This appeal therefrom was taken by the City on September 27. Since the strike had been settled in the meantime, there was no longer a need for an injunction, and the City is not urging its claims for damages. What it seeks is the resolution by this Court of the above recited questions concerning (1) the right of the City to maintain its suits, without having first exhausted the administrative remedies provided for by Ordinance No. 153–1971, and (2) the applicability to these suits of the provisions of § 59–2–1, supra.

On the other hand, defendants urge that these questions are moot and this Court should no longer concern itself with them. Defendants primarily rely upon Atchison, T. & S. F. Ry. Co. v. State Corporation Com'n, 79 N.M. 793, 450 P.2d 431 (1969); New Mexico Bus Sales v. Michael, 68 N. M. 223, 360 P.2d 639 (1961); Porter v. Robert Porter & Sons, Inc., 68 N.M. 97, 359 P.2d 134 (1961); Reeder v. Bowman, 64 N.M. 7, 322 P.2d 339 (1958); In Re Hickok's Will, 61 N.M. 204, 297 P.2d 866 (1956); State v. Vogel, 39 N.M. 122, 41 P.2d 1107 (1935); Buss v. Kemp Lumber Co., 23 N.M. 567, 170 P. 54 (1918).

■ It is true that in those cases we held this Court would not pass upon questions which had become moot. We do not propose to change that rule. However, the questions here presented are of great public interest and importance, and we will not permit the settlement of the dispute by one or more of the parties to terminate the right of the public to have these questions resolved on appeal. See in accord Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); So. Pac. Terminal Co. v. Int. Comm. Comm., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911);

United States v. Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); Friend v. United States, 128 U.S. App.D.C. 323, 388 F.2d 579 (1967); Dyer v. Securities and Exchange Commission, 266 F.2d 33 (8th Cir. 1959); In Re M, 3 Cal.3d 16, 80 Cal.Rptr. 33, 473 P.2d 737 (1970); Milford v. People's Community Hospital Authority, 380 Mich. 49, 155 N. W.2d 835 (1968); Lafayette Dramatic Productions v. Ferentz, 305 Mich. 193, 9 N.W.2d 57 (1943); Freeman v. Medler, 46 N.M. 383, 129 P.2d 342 (1942); Payne v. Jones, 193 Okl. 609, 146 P.2d 113 (1944). If, as in the present case, the questions of public importance are likely to recur, additional reason exists for the exercise by this court of its inherent discretion to resolve those questions. See United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); In Re M, supra; State Ex Rel. Rudolph v. Lujan, 85 N.M. 378, 512 P.2d 951 (1973).

We now consider the ruling of the district court that the suits were not maintainable because of the failure of the City to exhaust the administrative remedies provided in Sections 9 and 10 of Ordinance No. 153–1971. The pertinent language from these two sections of the Ordinance is:

"Section 9. PROHIBITED PRACTICES.—

"* * *.

"B. An employee organization, a group of City employees, or a City employee individually is prohibited from:

"* * *.

"(7) engaging in, inducing, or encouraging any City employee or group of employees to engage in a strike, work stoppage, or work slowdown.

"C. Any controversy concerning prohibited practices will be submitted to the City Labor Relations Board. * * * The City Labor Relations Board shall conduct a hearing within five (5) work days, and at

such hearing, the parties shall be permitted to be represented by counsel and to summon witnesses and submit evidence. * * *

"D. The City Labor Relations Board shall state its findings of facts and shall determine if a prohibited practice has been committed according to this Ordinance and shall report its findings to the City Commission. In case of a strike as defined in this Ordinance, the City Labor Relations Board shall meet in emergency session with all parties concerned and shall report its findings to the City Commission in a joint session within twenty-four (24) hours of notification of such prohibited practice.

"Section 10. PENALTIES AND SANCTIONS.—

"A. The City Labor Relations Board shall request that the City Commission enter an order against the party guilty of the violation. The City Commission may petition the appropriate district court to punish such violation in accordance with this Ordinance and shall file in the court the record of the proceedings.

"(1) In case of a strike as defined by this Ordinance, the City Commission may direct that the collective bargaining agreement ceases to exist, ordering an automatic decertification, and inform the employee organization that it no longer represents employees in the bargaining unit involved. The City Commission shall also notify the employees in subject bargaining unit of such action and advise them that they will not be privileged to bargain with the City government through a collective bargaining agent for at least twelve (12) months. In such a case, the employee organization that represented the employees who went on strike shall be prohibited from par-

ticipating in a representation election for City employees for a minimum of twelve (12) months.

"B. In the case of a party committing a violation of Section 9 of this Ordinance, the appropriate district court may, if requested by the Commission:

"(1) issue an order restraining and enjoining such violation. " * * *."

■ Unquestionably, defendant employees of the City went out on strike on July 30, and this strike continued for several days. This fact was obvious and is conceded. A strike is clearly a prohibited practice by Section 9B(7) of the Ordinance. A finding by the City Labor Relations Board as to the fact of the existence of the strike, or a determination by it that the strike was a prohibited practice under the Ordinance, could have accomplished nothing. Even conceding that compliance with the procedures prescribed by the Ordinance would ordinarily be required, nevertheless, the Board is not required to take useless, vain or futile action before a court can exercise its jurisdiction. State Ex·Rel. Norvell v. Credit Bur. of Albuquerque, Inc., 85 N.M. 521, 514 P.2d 40 (1973). See also Corsino v. Grover, 148 Conn. 299, 170 A.2d 267 (1961); Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 242 N.E.2d 868 (1968); Stanton v. Trustees of St. Joseph's College, 233 A.2d 718 (Me.1967); City of Holly Hill v. State, 132 So.2d 29 (Fla.App.1961).

■ The strike subjected the inhabitants of the City to grave dangers and threatened them with substantial and irreparable injuries. The courts are not required to disregard such dangers and threats and insist on the exhaustion of administrative remedies before exercising their jurisdiction to prevent the threatened dangers and injuries. Compare Bohemian Breweries v. Koehler, 80 Idaho 438, 332 P.2d 875 (1958); Mitchell v. Louisiana State Board of Optometry Exam., 128 So.2d 825 (La. App.1961); Mace v. Van Lare, 69 Misc.2d

1073, 332 N.Y.S.2d 277 (1972); United Ins. Co. of Chicago, Ill. v. Maloney, 127 Cal.App.2d 155, 273 P.2d 579 (1954).

The final issue to be considered on this appeal is whether § 59–2–1, supra (the little Norris-LaGuardia Act), is applicable to a strike by municipal employees. This section of our statutes provides:

*"Restrictions on granting of injunctions.*—"No court nor any judge or judges thereof within the state of New Mexico shall have jurisdiction to issue a permanent injunction or restraining order in any case involving or growing out of a labor dispute, within the state, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered and presented, and except after findings of all the following facts by the court or judge or judges thereof:

"(a) That unlawful acts have been threatened or committed and will be executed or continued unless restrained;

"(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

"(c) That complainant has no adequate remedy at law; and

"Such hearing shall be held after due notice as may be ordered in the discretion of the court, and in such manner as the court shall direct, to all known persons against whom relief is sought."

Defendants argue that since the language of this statute fails to expressly except from its application employees of the State of New Mexico, its agencies or political subdivisions, we are obliged to construe the statute as applying to public employees as well as to employees of private persons, businesses or corporations. They rely on the principle of statutory construction that this court must give effect to the express and unambiguous language of the statute and may not rewrite the statute in accordance with the court's

view as to how it should have been written. Bills v. All-Western Bowling Corporation, 74 N.M. 430, 394 P.2d 274 (1964); Burch v. Foy, 62 N.M. 219, 308 P.2d 199 (1957). We do not retreat from that principle of construction, but observe that neither case cited dealt with the problems of strikes or work stoppages by public employees. Defendants cite no case in support of their position in which this question has been involved.

Insofar as we are advised, all jurisdictions, which have dealt with this question, have taken the position that the Norris-LaGuardia Act, and the various versions thereof adopted in many states and known as little Norris-LaGuardia Acts, do not apply to strikes and work stoppages by public employees, in the absence of an express statutory provision that the act does so apply. United States v. Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Anderson Fed. of Teach. v. School City of Anderson, 252 Ind. 558, 251 N.E.2d 15 (1969), reh. denied, 252 Ind. 558, 254 N.E.2d 329 (1970); City of Minot v. General Drivers & Helpers U. No. 74, 142 N.W.2d 612 (N.D.1966); City of Pawtucket v. Pawtucket Teachers' Alliance, 87 R.I. 364, 141 A.2d 624 (1958); Port of Seattle v. International Longshore & W. U., 52 Wash.2d 317, 324 P.2d 1099 (1958); Manhattan & Bronx Surface Trans. Op. Auth. v. Quill, 48 Misc.2d 1021, 266 N.Y.S.2d 423 (1966); County of Westchester v. Arfman, 53 Misc.2d 642, 279 N.Y.S.2d 467 (1967). See generally to the same effect Hansen v. Commonwealth, 344 Mass. 214, 181 N.E.2d 843 (1962); Delaware River & Bay Au. v. International Org., Etc., 45 N.J. 138, 211 A.2d 789 (1965); Trustees of Cal. State Colleges v. Local 1352, S. F. State Etc. Teachers, 13 Cal.App.3d 863, 92 Cal.Rptr. 134 (1970). For a comprehensive annotation on the right of public employees to strike or engage in work stoppage, see Annot., 37 A.L.R.3d 1147 (1971), and, for a long list of cases from many jurisdictions which hold that public employees are denied the right to strike or engage in a work stoppage against a public employer, see § 3 at 1156 of this annotation.

The district court erred in holding that the City could not maintain the suits because of its failure to exhaust its administrative remedies under City Ordinance No. 153–1971, and that the provisions of § 59–2–1, supra, are applicable to a strike or work stoppage by public employees.

The final decree entered in these causes is reversed to this extent, and these causes are remanded to the district court for whatever further action, if any, is required to comply with this opinion.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.