854 P.2d 242

**Joseph P. ARNZEN, Plaintiff–Appellant,**

v.

**STATE of Idaho, Mack W. Richardson, Director of Department Law Enforcement, and John Does I through V, Defendants–Respondents.**

No. 19628.

Supreme Court of Idaho,
Boise, October 1992 Term.

· May 13, 1993.

Rehearing Denied July 13, 1993.

Randall, Blake & Cox, Lewiston, for plaintiff-appellant. Scott M. Chapman argued.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Phillip J. Collaer argued.

McDEVITT, Chief Justice.

### NATURE OF THE CASE

Appellant, Joseph P. Arnzen ("Arnzen"), appeals from the summary judgment of the district court. In granting summary judgment, the district court dismissed two 42 U.S.C. § 1983 claims against respondents State of Idaho ("State") and Mack W. Richardson ("Richardson") in his official capacity as Director of the Department of Law Enforcement ("Department"). The court dismissed these claims finding that neither respondent was a "person" as that word is used in 42 U.S.C. § 1983. In addition, the court dismissed state claims (wrongful termination, breach of contract, and intentional interference with a contract) against respondents, finding that Arnzen had failed to exhaust his administrative remedies under title 67, chapter 53, Idaho Code. After the initial summary judgment order, the court granted respondents' motion for reconsideration and dismissed the remaining 42 U.S.C. § 1983 claim against Richardson in his individual capacity. In dismissing the remaining federal claim, the court reasoned that under Idaho law it was not clear that the circumstances surrounding Arnzen's resignation from employment with the Department of Law Enforcement constituted constructive discharge. For the reasons stated below, we affirm in part and reverse in part, the decision of the district court.

## BACKGROUND AND PRIOR PROCEEDINGS

On October 10, 1990, Arnzen filed a complaint and demand for jury trial against the State and Richardson, both individually and in his official capacity as Director of the Department. In the complaint, Arnzen alleged that he had been employed by the Department, and that he was provided with an employment handbook which dictated the obligations of the employer and employee and provided for a grievance procedure. On October 18, 1989, during Arnzen's employment with the Department, he alleged that he was charged with violating I.C. § 36–1101(e) (1976), relating to attempting to kill a deer with the aid of an artificial light. When Arnzen asked his supervisor, Captain Ron Moore ("Moore"), what the Department would do to him, he alleged that Moore responded, "[n]othing. You might have to take your lumps in court." Arnzen then alleged that in reliance on Moore's statement, he pled guilty to the charge, was fined $127.50, and had his hunting license suspended for one (1) year. On October 20, 1989, Arnzen alleged that he was placed on administrative leave with pay pending an investigation, and that Moore told him that he did not have anything to worry about. On October 26, 1989, investigators came to Arnzen's home and took a written statement from him. On November 3, 1989, Moore came to Arnzen's home and informed him that the Boise office had decided that Arnzen would be fired if he did not resign.

Arnzen listed three counts in the complaint: (1) the acts of respondents denied him of his constitutional rights, U.S. Const. amend. V and XIV, and violated 42 U.S.C. § 1983 [1]; (2) the acts of respondents violated the employment contract; and (3) he was discharged without due process of law because he was not afforded a pre-termi-

nation hearing. Arnzen prayed for damages for violation of his civil rights, wrongful discharge, and failure to give notice and an opportunity to be heard.

On November 27, 1990, respondents filed a motion for summary judgment. Along with the motion, respondents filed three (3) supporting affidavits, in which the following was asserted:

1. *Affidavit of Ron Moore:* Moore was Arnzen's supervisor. On November 3, 1989, he was told by the "Boise office" to tell Arnzen that he could either resign or be discharged. In this regard, "[a]ffiant then advised Mr. Arnzen that if he refused to resign, he would be fired." On June 4, 1990, Moore received a grievance from Arnzen, but that grievance was denied because it was untimely. Since receiving the June 4, 1990 grievance, Moore has not received any further notice of appeal or other documentation from Arnzen.

2. *Affidavit of Kris Michalk:* Kris Michalk ("Michalk") is a claims technician for the Bureau of Risk Management. On February 7, 1990, he reviewed a claim for damages filed by Arnzen's attorney. After review, Michalk informed the attorney that it appeared that the claim could not be honored due to failure to comply with administrative remedies. On March 5, 1990, he received a letter from Arnzen's attorney requesting copies of the grievance procedure of the Department. On March 26, 1990, he provided Arnzen's attorney with the requested copies.

3. *Affidavit of Mack W. Richardson:* In October of 1989, Richardson was made aware of the charge against Arnzen and his subsequent conviction. On October 20, 1989, Arnzen was put on administrative leave with pay pending an investigation. On November 2, 1989, after the investigation, it was recommended that Arnzen be terminated but given the opportunity to resign. On November 3, 1989, Richardson

---

1. This federal statute reads in full:

 **§ 1983. Civil action for deprivation of rights**
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

signed a letter of termination addressed for Arnzen. However, Richardson was advised that Arnzen chose to resign. On June 4, 1990, Richardson was advised that Arnzen had filed a grievance and that the grievance was denied as untimely. Richardson has not received any subsequent notice of appeal or other documentation from Arnzen.

On December 20, 1990, Arnzen filed an amended complaint and demand for jury trial. In it, he added a cause of action regarding tortious breach or interference with a contract.

Along with the complaint, Arnzen filed an affidavit. In his affidavit, Arnzen stated that he was unwillingly forced to resign. In addition, he stated that the grievance procedure does not provide for the filing of a grievance by a discharged person since a discharged person no longer has a "supervisor." Further, Arnzen alleged that Moore told him that filing a grievance would be a futile act, and that "you know they are never giving you your job back." Finally, Arnzen alleged that because he did not have a supervisor and because of the statements by Moore, he did not file a grievance until he talked with an attorney.

On January 4, 1991, respondents filed an answer. Among other things, they asserted: (1) immunity from liability because they are not "persons" for purposes of 42 U.S.C. § 1983; (2) immunity from liability by virtue of title 6, chapter 9, Idaho Code; (3) no deprivation of Arnzen's constitutional rights; and (4) Arnzen's claim is barred by the Eleventh Amendment to the Constitution of the United States.

On July 25, 1991, the district court heard oral argument on respondents' motion for summary judgment. The court partially granted the motion, dismissing the causes of action against the State and Richardson in his official capacity. In doing so, the court found neither respondent to be a "person" under 42 U.S.C. § 1983. In addition, the court dismissed the state claims against respondents because it found that Arnzen had not exhausted his administrative remedies.

On August 12, 1991, respondents moved for reconsideration pursuant to I.R.C.P.

11(a)(2)(B). The motion pertained to the court's decision not to dismiss the federal claim against Richardson in his individual capacity.

On the same day, respondents filed the affidavit of R. Monte MacConnell in support of the motion for reconsideration. In his affidavit, Mr. MacConnell stated that he was Chief Counsel to the Director of the Department. In this capacity, he was consulted regarding the proper procedure for disciplinary action against Arnzen. He advised that Arnzen be placed on administrative leave with pay pending an investigation. Subsequently, he advised that state law would permit termination and he recommended that this be done. He then reviewed the termination letter and advised that Arnzen be given the option to resign.

The district court heard argument on the motion for reconsideration on August 29, 1991. On September 4, 1991, the court issued its opinion and order on the motion for reconsideration. The court stated the issue as "whether defendant, Mack W. Richardson, in his personal capacity is entitled to qualified immunity from liability under 42 U.S.C. § 1983." The court, citing *Wheaton v. Webb–Petett*, 931 F.2d 613, 619 (9th Cir.1991), reasoned that in order to determine whether qualified immunity shields Richardson from liability, it must ask "whether, in light of preexisting law, the unlawfulness of the official's actions must have been reasonably apparent to him or her." The court concluded that "it would not have been reasonably apparent" to Mr. Richardson that his actions were clearly in violation of the law. Furthermore, the court stated that "Idaho law is unclear as to whether or not requesting a public employee's resignation can constitute constructive discharge of that employee under certain circumstances." In this regard, the court compared *Jackson v. Minidoka Irrig. Dist.*, 98 Idaho 330, 563 P.2d 54 (1977), with *Knee v. Sch. Dist. No. 139, in Canyon County*, 106 Idaho 152, 676 P.2d 727 (Ct.App.1984), *review denied*, and concluded that:

Although it is decisively clear under Idaho law that a public employee has a vested property interest in continued em-

ployment, thus requiring that he or she be afforded notice and some sort of hearing before termination of employment, it is unclear on the facts of this case that the circumstances surrounding Mr. Arnzen's resignation constituted constructive discharge triggering these requisite due process protections. *Perry v. Sindermann*, 408 U.S. 593, 599[, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570] (1972); *Harkness v. City of Burley*, 110 Idaho 353[, 715 P.2d 1283] (1986).

Thus, the court granted respondent's motion for reconsideration and dismissed the cause of action against Richardson in his individual capacity. An order and judgment was issued on September 13, 1991, fully granting respondents' motion for summary judgment and awarding respondents $110.55 in costs.

On October 23, 1991, Arnzen filed a notice of appeal pursuant to I.A.R. 11(a)(1). He appealed from the August 6, 1991 order, the September 4, 1991 opinion and order, and the September 12, 1991 order.

### ISSUES ON APPEAL

In order to resolve this appeal, we must address the following issues:

I. Was the district court correct in ruling that the State and Richardson, in his official capacity as Director of the Department, were not "persons" as that word is used in 42 U.S.C. § 1983?

II. Was the district court correct in ruling that Richardson, in his individual capacity, was entitled to qualified immunity?

III. Was the district court correct in dismissing the State claims because Arnzen failed to exhaust administrative remedies?

### *ANALYSIS*

### I.

### WAS THE DISTRICT COURT CORRECT IN RULING THAT THE STATE AND RICHARDSON, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DEPARTMENT, WERE NOT "PERSONS" AS THAT WORD IS USED IN 42 U.S.C. § 1983?

The United States Supreme Court has recently addressed "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of 42 U.S.C. § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 60, 109 S.Ct. 2304, 2305, 105 L.Ed.2d 45 (1989). The Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312. It explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71, 109 S.Ct. at 2311 (citations omitted). In reaching its decision, the Court recognized that § 1983:

> [P]rovides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum to litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suit unless the State has waived its immunity, ... or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66, 109 S.Ct. at 2309 (citations omitted).

It is clear "[t]hat Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity...." *Will*, 491 U.S. at 66, 109 S.Ct. at 2309, citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). We have interpreted *Quern* to "hold not only that § 1983 does not abrogate the states [sic] eleventh amendment immunity, but also as holding that states are not 'persons' for purposes of § 1983." *Merritt v. State*, 108 Idaho 20, 26, 696 P.2d 871, 877 (1985).

▇ Thus, it is clear that, in Idaho, the State, for purposes of 42 U.S.C. § 1983, is not a "person." Additionally, it is clear that a suit against a state official acting in his or her official capacity, is nothing more than a suit against the state, and, thus, the

state official in his or her official capacity is not, for purposes of 42 U.S.C. § 1983, a "person."

## II.

## WAS THE DISTRICT COURT CORRECT IN RULING THAT RICHARDSON, IN HIS INDIVIDUAL CAPACITY, WAS ENTITLED TO QUALIFIED IMMUNITY?

■ In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Later, in *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the United States Supreme Court explained that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." More recently, in *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991), the United States Supreme Court further explained the qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986), by "accomodat[ing] for reasonable error." Thus, in order to determine whether Richardson, in his individual capacity, was entitled to qualified immunity, we must ask:

1. Was there a clearly established law;
2. Did Richardson's conduct violate a clearly established right of Arnzen's; and
3. Was Richardson's conduct reasonable?

### A. *Was There A Clearly Established Law?*

■ It is abundantly clear that at the time this action arose, public employees in Idaho who had a property interest in con-

tinued employment could not be deprived of this property interest without due process of law. *Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986); *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). It was equally well-established that due process requires, at a minimum, notice of the contemplated action and notice of the basis and evidence relied upon for the contemplated action, and an opportunity to respond. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. The first component of the due process requirement, notice, may be an oral or written notification of the charges against the employee and the basis and evidence supporting those charges. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. The second component of the due process requirement, opportunity to respond, is an opportunity for the employee, either in person or in writing, to present his or her reasons "why *proposed* action should not be taken...." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (emphasis added). Of course, as our emphasis indicates, the opportunity to respond must take place before the administrative action occurs. More specifically, Arnzen must have been given an opportunity to respond to the charges against him before the State made the decision to terminate him from employment with the Department.

### B. *Did Richardson's Conduct Violate A Clearly Established Right Of Arnzen's?*

This prong of the qualified immunity analysis is a compound question: (1) did Arnzen have a clearly established right; and (2) did Richardson's conduct violate it?

■ As to the first question, in order for Arnzen to have a property interest in continued employment with the Department, he must have been more than an employee at will. *Harkness,* 110 Idaho at 356, 715 P.2d at 1286. "[A]n employee 'hired pursuant to a contract which specifies the duration of the employment, *or* limits the reasons for which the employee may be discharged' is not an employee 'at will.'" *Harkness,* 110 Idaho at 356, 715

P.2d at 1286, quoting *MacNeil v. Minidoka Memorial Hosp.*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985) (emphasis in original). In *Tiffany v. City of Payette*, 121 Idaho 396, 825 P.2d 493 (1992), we held that an employee did have a property interest in continued employment with the City of Payette where she was a "permanent" employee according to the terms of an employee policy manual and was, thus, entitled to the procedural protections of the manual. In this case, the parties do not dispute Arnzen's status as a "classified" employee of the State with "permanent" status. Thus, Arnzen was entitled to the procedural protections of the policy and procedure manual, as well as, at least, the minimum due process protections.

As to the second question, we must look to the facts to determine if Richardson's conduct violated Arnzen's right to due process. According to his affidavit, Richardson signed a letter of termination addressed to Arnzen on November 3, 1989.[2] So, the decision to terminate Arnzen occurred on November 3, 1989. Prior to this decision, there was no notice or opportunity to be heard by Arnzen.[3] In other words, Richardson's conduct (his decision to terminate Arnzen) violated Arnzen's right to minimal due process protections.

### 3. *Was Richardson's conduct reasonable?*

The third prong of the qualified immunity analysis requires this Court to ask whether a reasonably competent public official in Idaho in 1989 would have known that a public employee who possessed a property interest in their continued employment had the right to notice and a hearing before termination from employment. *Hunter*, —— U.S. at ——, 112 S.Ct. at 537; *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Therefore, in the present case, if the law was clearly established that Arnzen, as a "classified" employee of the State with "permanent" status, was entitled to due process guarantees, then Richardson's "immunity defense ordinarily should fail since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738.

Recently, this Court reiterated that a public employee who is hired pursuant to contract which specifies the duration of employment or limits the reasons for termination has a property interest in continued employment. *Tiffany*, 121 Idaho at 404, 825 P.2d at 501. In 1986, we held that a public employee who has a property interest in continued employment cannot be terminated before being given due process. *Harkness*, 110 Idaho at 356, 715 P.2d at 1286. Additionally, we held:

[A] permanent employee, whose employment is not terminable at the will of either the employee or the employer, holds a property interest in his or her

2. The letter of termination read:
November 3, 1989
Cpl. Joseph P. Arnzen
HCL 1
Box 34
Nezperce, Idaho 83543
Dear Cpl. Arnzen:
I have reviewed the Investigative Report conducted as a result of your arrest by an officer of the Idaho Fish and Game Department for attempting too [sic] kill a deer with the aid of an artificial light and your subsequent conviction for a violation of Idaho Code 36–1101(e).
I consider this action on your part as being detrimental to good order and discipline within the Department and in accordance with Idaho Personnel Commission Rule 19.A.1.e, I am terminating your employment as a Corporal with the Idaho State Police effective 5:00 PM, November 6, 1989. Your accumulated vacation time of 139.72 hours will be paid to you in a lump sum.
Sincerely,

/s/
Mack W. Richardson, Jr.
Director
Department of Law Enforcement
c: Richard Hutchinson, IPC
 Col Rich Humpherys, ISP
 Capt Ron Moore, ISP
 John Butler, DLE
 Monte McConnell, DLE

3. We note that Arnzen was placed on administrative leave with pay pending an investigation prior to Richardson's decision to terminate him. In fact, Arnzen received written notification that the suspension was "pending an investigation of your recent alleged Fish and Game criminal violations." Although the record reveals that the investigators took a written statement from Arnzen, it does not reveal *what* his supervisor's concerns or complaints were, or the *extent* to which Arnzen had an opportunity to respond.

position. *Allen v. Lewis–Clark State College,* 105 Idaho 447, 460 n. 6, 670 P.2d 854, 867 n. 6 (1983) ("A term of employment set by contract is a property interest safeguarded by due process."); *Bowler v. Board of Trustees,* 101 Idaho 537, 541, 617 P.2d 841, 845 (1980) (Teacher's interest in renewable contract rights to continued employment was a property interest); *Ferguson v. Board of Trustees,* 98 Idaho 359, 364, 564 P.2d 971, 976 (1977), *cert. denied,* 434 U.S. 939, 98 S.Ct. 431 [54 L.Ed.2d 299] (1977) (Teacher's right to automatic annual renewal of contract and right not to be discharged except for cause gave property interest in employment.).

As Chief Justice Donaldson wrote for a unanimous Court, an employee "hired pursuant to a contract which specifies the duration of the employment, *or* limits the reasons for which the employee may be discharged" is not an employee "at will." *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 589, 701 P.2d 208, 209 (1985) (emphasis added).

*Harkness,* 110 Idaho at 356, 715 P.2d at 1286 (footnote omitted). We hold that the law was clearly established in 1989 that Arnzen, as a "classified" and "permanent" employee of the State, had a property interest in continued employment. Therefore, Richardson, in terminating Arnzen without due process, did not act as a reasonably competent public official in Idaho in 1989.

 We further hold that Richardson, in his individual capacity, was not entitled to qualified immunity; the law was clearly established that Arnzen had a property right to due process guarantees before he was terminated, Richardson's conduct violated Arnzen's property right, and Richardson's action was not that of a reasonably competent public official in Idaho in 1989.

### III.

### WAS THE DISTRICT COURT CORRECT IN DISMISSING THE STATE CLAIMS BECAUSE ARNZEN FAILED TO EXHAUST ADMINISTRATIVE REMEDIES?

In *Bohemian Breweries v. Koehler,* 80 Idaho 438, 332 P.2d 875 (1958), this Court set forth the rule of exhaustion of administrative remedies as follows:

> While as a general rule administrative remedies should be exhausted before resort is had to the courts to challenge the validity of administrative acts, such rule is not absolute and will be departed from where the interests of justice so require, and the rule does not apply unless the administrative agency acts within its authority.

*Bohemian Breweries,* 80 Idaho at 446, 332 P.2d at 879. This Court has consistently followed this rule. In *Grever v. Idaho Tel. Co.,* 94 Idaho 900, 499 P.2d 1256 (1972), we set forth the rule as follows:

> [T]he doctrine of exhaustion of administrative remedies generally requires that the case run the full gamut of administrative proceedings before an application for judicial relief may be considered.

> . . . . .

> In relaxing the doctrine of exhaustion this Court held that the rule will be departed from under certain circumstances, first, where the interests of justice so require and secondly, where the agency acts outside its authority.

*Grever,* 94 Idaho at 903, 499 P.2d at 1259, citing *Bohemian Breweries,* 80 Idaho at 446, 332 P.2d at 879 (footnotes omitted). More recently, we have recognized the exhaustion rule as set forth in *Grever* and *Bohemian Breweries* in *Fairway Dev. Co. v. Bannock County,* 119 Idaho 121, 125, 804 P.2d 294, 298 (1990).

The policies and procedures of the Department set forth a four-step grievance process. The first step, which is optional, is a discussion with the grievant's "immediate supervisor." *Idaho Dep't of Law Enforcement, Policy and Procedure,* DLE 89–304, p. 2 (Effective 10/01/89). The second step requires the grievant to file a written grievance with his or her "immediate supervisor," or, if that person is not available, his or her "next-level supervisor." DLE 89–304, pp. 2–3. After receiving a "suggested solution" from the "sec-

ond-level supervisor," the third step requires the grievant to file a "Request for Impartial Review" with his or her "second-level supervisor." DLE 89–304, pp. 3–5. After an impartial review panel hears the grievance, it submits its decision to the grievant and the Director. The Director then informs the grievant of the "Department's decision." DLE 89–304, p. 5. Finally, the grievant is then allowed to file an appeal under I.C. § 67–5316. DLE 89–304, p. 5.

■■ Arnzen argues that since he was fired, he did not have a "supervisor," and, therefore, could not comply with the grievance process. This argument is flawed for two reasons. First, the record discloses that Arnzen did file a grievance with Moore, his supervisor, on June 4, 1990. The record further reveals that Arnzen's grievance was processed by the Department and ultimately denied as being untimely.[4] Second, if we were to accept Arnzen's argument, every employee who is dismissed from employment with the Department would be without administrative recourse.

■■ Arnzen also argues that the rule of exhaustion should be relaxed because Moore had told him that the Department would never give him his job back. Essentially, Arnzen is making a futility argument. The grievance procedure sets forth four steps. The first two steps involve the grievant's supervisor. The third step involves an impartial review panel, consisting of reviewers chosen by the grievant and the Department who are not employed by the grievant's particular agency. DLE 89–304, p. 4. Arnzen sets forth no reasons why he would not be afforded a meaningful review by this panel. Our examination of the record likewise reveals no reasons why an administrative appeal to the impartial review panel would be futile for Arnzen.

Because Arnzen has failed to show that justice requires relaxation of the exhaustion rule or that the Department acted outside its authority, the general rule of ex-

haustion of administrative remedies applies. Therefore, the district court correctly dismissed his state claims for failure to exhaust his administrative remedies.

### CONCLUSION

We affirm that portion of the district court's opinion and judgment dismissing Arnzen's 42 U.S.C. § 1983 claims against the State and Richardson, in his official capacity, and dismissing Arnzen's state law claims. We reverse that portion of the district court's opinion and judgment dismissing Arnzen's 42 U.S.C. § 1983 claim against Richardson in his individual capacity.

No costs on appeal.

JOHNSON and BISTLINE, JJ., and BAIL, J. Pro Tem., concur.

BAKES, Justice Pro Tem., concurring.

I concur in the Court's opinion, and write only to note that a more fully developed record might disclose that no *Loudermill* due process violation occurred in this case. As footnote 3, ante p. 248 points out, Arnzen was given written notification that his employment was suspended because of his fish and game violation, and he was given the opportunity to, and did give a written statement, the contents of which may have satisfied his due process right "to respond." However, the record is not sufficiently developed to support the trial court's summary judgment in this case.

---

4. The grievance procedure requires the grievant to file his or her grievance within five (5) days

"from the time you are notified or become aware of a grievable matter." DLE 89–304, p. 2.