617 P.2d 841

Kenneth BOWLER, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 392, SHOSHONE COUNTY, MULLAN, Idaho, Defendant–Respondent.

Nos. 13176, 13440.

Supreme Court of Idaho.

Sept. 25, 1980.

E. W. Pike of Albaugh, Smith, Pike & Martin, Idaho Falls, for defendants–appellants.

William C. Carr of Petersen, Moss & Olsen, Idaho Falls, for plaintiff–respondent.

Byron J. Johnson, Boise, for plaintiff–appellant.

Barbara J. Miller of Cumer L. Green Law Offices, Boise, for defendant–respondent.

BAKES, Justice.

This controversy concerns the discharge of a grade school teacher, plaintiff appellant Kenneth Bowler. Bowler's complaint alleges that the defendant respondent Board of Trustees violated his constitutional right to due process by discharging him without the benefit of certain procedural safeguards. The district court held otherwise and entered summary judgment on behalf of the board. Bowler appeals, and we reverse.

Bowler was a fifth grade teacher in the Mullan, Idaho, school district with a renewable teaching contract, as specified in I.C. § 33–1212. In April, 1976, Bowler properly notified the school district of his intention to accept the annual contract renewal. Under I.C. § 33–1212 this notice automatically renewed his teaching contract for the 1976–77 school year. *See Robinson v. Joint School Dist. No. 150*, 100 Idaho 263, 596 P.2d 436 (1979). However, in May, 1976, the district superintendent received complaints about appellant's teaching from several parents. Some of these complaints were expressed in letters written to the superintendent. At the June 7, 1976, school board meeting the board heard oral complaints from the parents about appellant's teaching performance. A discussion followed. Appellant was not present. Appellant was not advised of the nature of the complaints presented at the meeting and was not at that time given leave to respond to them. On June 14, 1976, the district superintendent sent appellant a "notice of suspension" informing him that he was officially suspended from his position as of June 15, 1976, for several alleged breaches of duty specified in the notice. Appellant was notified that the superintendent's suspension would be presented to the school board for its approval or rejection at a special meeting to be held on June 21, 1976. Appellant was further informed that if the suspension was approved he would be entitled to a hearing before the board on the matter. On June 21, 1976, the board met to consider appellant's suspension. Appellant and his counsel were present. The board then issued a "notice of confirmation" in which the board ratified the superintendent's suspension. The notice specifically delineated fifteen reasons in support of the board's action.

At appellant's request an open meeting on the matter of his suspension was scheduled for July 19, 1976. Appellant appeared at this hearing accompanied by counsel and requested a continuance of the matter to enable his attorneys to prepare his defense. The hearing was continued until a time to be mutually acceptable to both parties. In addition to obtaining the continuance, appellant's attorney and counsel for the school board entered into a stipulation. Counsel for Bowler and the board agreed to exchange documents and witness lists in advance of the hearing, even though no discovery is provided for either by state statute or local board rule. The stipulation also included the following waiver:

"MR. GREEN: . . .

"Mr. Hannon and Mr. Frazier, on behalf of Mr. Bowler, waive any due process objections that relate to the notice, the timeliness of the notices, the notice of suspension, hearing dates, and of rights to counsel at this time.

"Mr. Hannon and Mr. Frazier further agree that if they have any additional due process objections, if they will give notice to the Board and to myself [board counsel] at least one week before the hearing such objections will not cause another delay in the hearing and can be heard at that time.

.        .        .        .        .

"I think that the due process would include form and substance of notice and timeliness."

Attempts to establish a date acceptable to Bowler and his counsel proved fruitless. Thus, on September 7, 1976, the board unilaterally established September 16, 1976, as the hearing date. Sometime prior to September 16, 1976, the school district hired a new teacher to replace Bowler for the 1976–77 school year.

The hearing on Bowler's discharge was held by the board on September 16 and 17,

1976. Appellant made no due process objections prior to commencement of the hearing. However, he made strenuous objections at the hearing concerning the school district's failure to adhere to its own regulations governing the suspension or discharge of school district employees.

At the hearing, several parents testified about appellant's teaching methods and abilities. Testimony was also taken from the district superintendent, teaching aides who worked with appellant, and appellant himself. On September 20, 1976, the board sent appellant a "notification of discharge" terminating his employment with the district as of the date of notice. The notification of discharge specified no reasons for the board's action, but noted only that "a majority of the Board of Trustees voted to discharge you from your employment with the district." Appellant did not object to the notice of discharge, nor did he request a statement of reasons for the board's action.

On October 21, 1977, over a year later, appellant filed a complaint in district court seeking reinstatement, back pay, interest and attorney fees. The complaint alleged that the board discharged the appellant in violation of its own published regulations and the state and federal constitutions.

The defendant school board moved for summary judgment in July, 1978, and supported the motion with affidavits by board members. Appellant submitted opposing affidavits. Following a hearing the district court granted the board's summary judgment motion. The summary judgment was entered on November 7, 1978. Appellant filed his first appeal, No. 13176, from that summary judgment.

On June 14, 1979, after briefs were filed in appeal No. 13176, the district court entered judgment against appellant for costs. The cost bill included a $1,015.65 charge for respondent's cost of "reporting and transcribing" certain board meetings. Appellant also brought an appeal, No. 13440, from that judgment. Prior to oral argument, the two appeals were consolidated for hearing and decision.

At the outset, it is important to recognize what this case does *not* involve. It does not involve an appellate review of the type found in I.C. § 67–5215 (relating to appeals from administrative agencies). We are aware of no statute providing for judicial appellate review from decisions of the board of trustees of a school district, and none has been called to our attention by counsel for the parties. This case does not involve a claim for breach of contract, as did the case of *Robinson v. Joint School Dist. No. 150*, 100 Idaho 263, 596 P.2d 436 (1979). Appellant's claim is simply and solely that he was denied procedural due process of law.

Appellant's allegations of procedural error are derived from three different sources. The first is a set of "policies" adopted by the board prior to the 1975–76 school year. Appellant alleges that the board violated its own policies: by failing to require parents' complaints to be signed and in writing (Policy Nos. 204.7 & 1002.5); by failing to grant appellant an opportunity to respond to the complaints as they were presented to the board (Policy No. 1002.5); by dismissing appellant without an opportunity to participate in an "improvement program" prior to his ultimate discharge (Policy No. 602.12); by failing to give him an opportunity to correct the proposed reasons for dismissal (Policy No. 603.3); and by discharging appellant without a statement of reasons (Policy No. 603.3).

Appellant's second source of procedural protection is the Idaho Code. Appellant maintains that the board violated I.C. § 33–1212 by discharging him without benefit of a probationary period. Appellant also alleges that the statutory scheme for renewable teacher contracts, I.C. § 33–1212 *et seq.*, precluded the board from considering evidence of events preceding April 1, 1976, the last date for the board to notify a teacher with renewable contract rights of

its intention not to renew his contract. *See* I.C. § 33–1213.

The third source of procedural safeguards is the due process clause of the fourteenth amendment, which requires that the state observe certain procedures in terminating an individual's liberty or property interest. *E. g., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Ferguson v. Board of Trustees of Bonner County School Dist. No. 82*, 98 Idaho 359, 564 P.2d 971 (1977), *cert. denied* 434 U.S. 939, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977); *Buckalew v. City of Grangeville*, 97 Idaho 168, 540 P.2d 1347 (1975). Appellant maintains that the board ran afoul of constitutional due process by failing to give appellant a statement of reasons for his discharge. Appellant also asserts that the board was not an impartial decisionmaker. Appellant further contends that the procedural safeguards embodied in the board's "policies" became part of his property interest and thus are of constitutional dimension. In essence, appellant argues that the board's policies are incorporated into the concept of constitutional due process. *See Oppenheimer Mendez v. Acevedo*, 512 F.2d 1373 (1st Cir. 1975).

■ Both parties agree that appellant's interest in continued employment as a teacher was a property interest entitled to procedural due process protection. *Ferguson v. Board of Trustees of Bonner County School Dist. No. 82, supra.* The primary issue in this case concerns the nature of the process due. For purposes of analysis, we will separate the alleged procedural defects described above into two groups, those arising prior to the September 16 hearing on the merits of the discharge, and those arising during or after the hearing.

■ As to the first group, we conclude, as did the court below, that most of the alleged procedural defects occurring prior to the September 16 hearing were waived pursuant to the July 19 stipulation. That stipulation covered "any due process objections that relate to the notice, the timeliness of the notices, [and] hearing dates . . . ." Board Policy Nos. 204.7 and 1002.5, insofar as they require citizen complaints to be in writing, relate to notice and thus are covered by the stipulation. Board Policy No. 1002.5 also requires that the teacher be advised of the nature of the complaint and be given every opportunity to respond to it. The record clearly reflects that appellant was well informed of the nature of the parents' complaints prior to the September 16 hearing, and had every opportunity to rebut them at the hearing itself. As to appellant's argument that he should have been given an opportunity to respond to the complaints at an earlier point in time, we think that such objection was waived by that portion of the stipulation relating to the timing of the hearing, *i. e.*, the "hearing date."

■ Not every alleged pre–hearing procedural defect is covered by the July 19 stipulation. Nonetheless, we conclude that appellant was not entitled to the benefit of a probationary period, I.C. § 33–1212, or an improvement program, Policy No. 602.12, prior to his ultimate discharge. Both I.C. § 33–1212 and Policy No. 602.12 pertain to procedures for non–renewal of a teacher's contract at the end of a contract term. At the time of appellant's dismissal, the procedures applicable to discharge during a contract term were found in the "Procedure for Suspension and Discharge of Certificated Professional Employees During Contract Term" (Idaho State Board of Education Policy Manual for Public Schools § 307.2, 1974). The State Board of Education had adopted those procedures pursuant to a grant of legislative authority found in former I.C. § 33–513(4) (amended 1978 Idaho Sess.Laws, ch. 340, § 3, p. 874). I.C. § 33–513(4) now codifies the procedures applicable to discharge during a contract term. Neither the State Board procedure nor the current version of I.C. § 33–513(4)

requires a probationary period or improvement program prior to discharge during a contract term.

■ The final pre–hearing procedural issue concerns Board Policy No. 603.3, which reads in part: "Dismissal shall be appropriate only after said employee has been notified of the reasons for his/her proposed dismissal and has had a reasonable length of time to correct them." Here, appellant was not given an opportunity to correct his shortcomings prior to the proposed dismissal. However, it is our conclusion that Policy No. 603.3 confers no absolute rights upon appellant. By its precatory terms, the policy is merely instructive and not mandatory. The procedure of Policy No. 603.3 is denominated only as "appropriate." A board of trustees must necessarily retain the discretion to terminate the employment of a teacher for reasons which the board feels are not correctable.

We therefore affirm the trial court's conclusion that there were no actionable due process violations which occurred prior to the commencement of the discharge hearing on September 16, 1976. Because of this, we need not determine whether the board's failure to adhere to its own internal procedural policies prior to September 16, 1976, amounts to a defect of constitutional magnitude. That issue must be resolved another day.

We turn now to those alleged procedural violations occurring during or after the September 16 hearing. The trial court concluded that the board need not provide the teacher with a statement of reasons in support of the discharge. The court also concluded that the board was a sufficiently neutral and impartial decisionmaker. Although we affirm the court's conclusion that there exists no genuine issue of material fact with respect to the board's neutrality, we think that fundamentals of constitutional due process require that a discharged teacher be given a statement of reasons for his dismissal. Accordingly, we reverse.

■ In resolving these issues, we are called upon to determine what process is due pursuant to the Fourteenth Amendment of the United States Constitution. Due process is not a rigid concept to be mechanically applied to every adversary confrontation; rather, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The United States Supreme Court requires consideration of three factors in determining whether a given procedural safeguard should be required:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

While this three–factored approach gives due process the flexibility which it deserves, it also embodies soft variables which are conducive to *ad hoc* determinations yielding widely divergent results. *Compare Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (requiring informal notice and hearing procedures prior to a student's suspension from school for ten days or less) *with Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (permitting corporal punishment in public schools without any notice or opportunity to be heard, subject only to imposition of liability in cases of excessive punishment).

■ Both parties to this appeal agree that a teacher with renewable contract rights is entitled to a discharge hearing before an appropriately neutral board of

trustees. It is well established that "actual bias of a decisionmaker is constitutionally unacceptable." *Ferguson v. Board of Trustees of Bonner County School Dist. No. 82,* 98 Idaho at 365, 564 P.2d at 977. It is also well established that prior exposure to the facts of a case does not by itself disqualify a decisionmaker. *Id.; Hortonville Joint School Dist. No. 1 v. Hortonville Education Ass'n,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In this case, members of the board submitted affidavits in support of the board's motion for summary judgment in which they denied the existence of any pre–hearing bias. The board members were also briefly polled by board counsel prior to the September 16, 1976 hearing. All board members indicated that they had made no predetermination. Appellant's counsel also briefly questioned the board chairman concerning the possibility of the board's impartiality. Nothing in the record on motion for summary judgment supports a finding of actual bias.

Appellant contends that actual bias is established by the fact that the board had employed a replacement for the teacher for the 1976–77 school year. We disagree. As the court below noted, the school year had begun prior to the September 16 hearing. The board is obligated by statute to properly staff the school. I.C. §§ 33–511 and –513. Thus, it was necessary to find a replacement for appellant, who was lawfully suspended at the time the school year commenced. Significantly, it was necessary to hire a replacement due to the continuance granted at the request of appellant at the July 19 board meeting. Had appellant been prepared to proceed on July 19, 1976, it might not have been necessary to hire a replacement prior to the hearing.

■ While we affirm the trial court's decision upholding the neutrality of the board, we think the court erred in concluding that the board need not include a statement of reasons in notifying the appellant of his discharge. Certainly, due process does not require a statement of reasons for every decision affecting a liberty or property interest. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). On the other hand, the United States Supreme Court has included a statement of reasons in its core requirements for formal adjudicatory hearings. *See, e. g., Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits). Several courts have required a statement of reasons in public teacher discharge cases, even absent a statutory requirement. *Staton v. Mayes,* 552 F.2d 908 (10th Cir. 1977), *cert. denied* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *Bogart v. Unified School Dist. No. 298 of Lincoln City,* 432 F.Supp. 895 (D.Kan.1977); *Powell v. Board of Public Instruction of Levy County,* 229 So.2d 308 (Fla.App.1969); *Morey v. School Board of Independent School Dist. No. 492,* 268 Minn. 110, 128 N.W.2d 302 (1964). We are aware of no contrary authority. Moreover, we have recently required a statement of reasons for determinations involving rezone applications. *Cooper v. Board of County Commissioners of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980). *See also Robinson v. Joint School Dist. No. 150,* 100 Idaho 263, 269, 596 P.2d 436, 442 (1979) (Shepard, C. J., concurring and dissenting); *Local 1494, Intl. Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 650, 586 P.2d 1346, 1366 (1978) (Donaldson, J., dissenting).

The "reasons" requirement is well supported by application of the three–factor test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). First, the interest of a teacher with renewable contract rights is substantial. Secondly, the administrative cost of providing a statement of reasons would be minimal. We discern no ancillary disruptive effect on administrative efficiency. Thirdly, the benefits of such a requirement are evident. It dispenses with the appearance of arbitrariness which attends a discharge without explanation; encourages the board to come to grips with and articulate its reasoning process; encourages fairness by holding the de-

cision up for public and judicial scrutiny; enhances the visibility of the decisionmaking process; and provides for a more meaningful judicial inquiry should the case subsequently be litigated in the courts. Accordingly, we hold that a teacher who is discharged after a hearing is entitled to know the reasons for his dismissal.[1] The summary judgment of the court below it reversed on this ground.[2]

This does not mean, however, that appellant is entitled to the relief he requests. Cases involving deprivations of procedural due process are not decided in a vacuum, nor are technical procedural requirements emphasized to the point of distraction. On remand, the trial court must address itself to several other questions in need of resolution.

■■■■■ First, procedural requirements can be waived. *Ferguson v. Board of Trustees of Bonner County School Dist. No. 82,* 98 Idaho 359, 564 P.2d 971 (1977), *cert. denied* 434 U.S. 939, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977). In the instant case, thirteen months passed between the board's decision to discharge appellant and the commencement of this action. During this time, appellant made no objection to the failure of the board to inform him of their reasons for his dismissal. Appellant was represented by two attorneys at the time of the discharge. Appellant has made no explanation for his failure to promptly object or demand a statement of reasons. For all we

know, the board might have honored such a demand. On remand, the trial court should determine whether, under the circumstances, the appellant's failure to make a prompt objection to the board's lack of findings should be deemed a waiver of the right.[3]

■■■■■ Secondly, appellant bears the burden of showing that any procedural error is prejudicial. *See Weissman v. Board of Education of Jefferson County School Dist.,* 547 P.2d 1267 (Colo.1976); *White v. Board of Education,* 501 P.2d 358 (Haw.1972); *Wegner v. Independent School Dist. No. 286,* 301 Minn. 354, 222 N.W.2d 352 (1974); *Independent School Dist. No. 316 v. Eckert,* 281 Minn. 445, 161 N.W.2d 692 (1968). Appellant has not alleged that the board's failure to provide him with a statement of reasons has in any way affected his ability to assert his substantive rights. Appellant has not asserted on appeal that he was fired without good cause, nor has he asserted that his discharge constituted a breach of contract.[4] Indeed, appellant has not alleged that he was unaware of the reasons for his discharge, which were arguably well–documented in the board's notice of confirmation of suspension. On remand, appellant must establish that he was prejudiced by the board's failure to provide him with reasons for discharge.

■■■■■ Similarly, in order to prevail on his claim for damages, appellant must demonstrate that the decision of the board was

---

1. The statement of reasons need not be exhaustive. "[T]he decisionmaker should state the reasons for his determination and indicate the evidence he relied on, . . . though his statement need not amount to a full opinion or even findings of fact and conclusions of law." *Goldberg v. Kelly,* 397 U.S. at 271, 90 S.Ct. at 1022 (1970) (citation omitted).

2. Again, because we hold that a statement of reasons is constitutionally compelled, we need not decide whether the board's violation of its own policy requiring an explanation for discharge amounts to a defect of constitutional magnitude.

3. The court below did not determine whether appellant had waived his right to a statement of reasons by failing to timely and promptly object. Instead, the court felt that appellant's

claim in general was barred by the doctrine of laches. Laches, however, requires a showing of prejudice to the party asserting it. *E. g., Grover v. Idaho Public Utilities Comm'n,* 83 Idaho 351, 364 P.2d 167 (1961). The board has failed to demonstrate that the thirteen month delay has resulted in any prejudice. It would be an unusual case where such a defense as laches could be resolved on summary judgment, raising as it does complex factual issues.

4. Appellant's complaint alleged only that the board "acted arbitrarily capriciously in discharging plaintiff from his employment." However, appellant did not attack the merits of the board's decision by means other than this general allegation.

substantively erroneous. It is now well established that where the deprivation of a protected liberty or property interest is substantively justified, but procedurally defective, the plaintiff is entitled to recover only nominal damages. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Actual damages are not inherent where there exists only a technical procedural defect unaccompanied by a corresponding erroneous substantive deprivation. We think that is especially true where, as here, an individual is afforded ample notice and opportunity to be heard. Thus, in order to prevail, appellant must allege and prove either that his employment contract was breached by the board or that he was unjustifiably discharged. If not, he would not be entitled to reinstatement and would only be entitled to nominal damages for the technical breach of his procedural due process rights. *Carey v. Piphus, supra.*

█ Appellant also contends that the statutory scheme for renewable teacher contracts, I.C. § 33–1212 *et seq.*, precludes the board from considering evidence of events occurring prior to April 1, 1976, the last date for the board to notify a teacher with renewable contract rights of its intention not to renew his contract for the 1976–77 school year. *See* I.C. § 33–1213. In essence, appellant maintains that a discharge during the contract term can be based only on conduct taking place during that term. We find no support for that proposition in the statutes pertaining to renewable teacher contracts. We decline to hinder the board's ability to maintain a competent professional staff by limiting the scope of its inquiry to the current contract term.

The final issue presented by this consolidated appeal concerns the propriety of the trial court's cost award in No. 13440. The court charged appellant Bowler with the cost of preparing the transcript of the proceedings before the board. Because we reverse and remand, however, we cannot at this time determine which party is the prevailing one within the meaning of I.R.C.P. 54(d)(1)(B). That question can be resolved only after the further proceedings below.

We nonetheless deem it necessary to underscore some of the pertinent portions of I.R.C.P. 54(d)(1). I.R.C.P. 54(d)(1)(C) covers costs as a matter of right. Since this is not an appellate review, the transcript cost would appear to fall only into the "exhibit" category of I.R.C.P. 54(d)(1)(C)(6), which is subject to a $250.00 limitation. If the trial court wishes to exceed that limitation, it may grant only discretionary costs in accordance with I.R.C.P. 54(d)(1)(D). In that case, express findings supporting the award must be made.

The summary judgment of the court below is hereby reversed and remanded for proceedings not inconsistent with this opinion.

DONALDSON, C. J., and McFADDEN and BISTLINE, JJ., concur.

SHEPARD, Justice, concurring in part and dissenting in part:

I would affirm the judgment of the court below. I agree with all the Court's opinion except that part which reverses the trial court's decision as it relates to the failure of the board to state its reasons for appellant's discharge. As the majority states, there is no showing that the appellant was unaware of the reasons for his discharge, or that appellant's substantive rights were prejudiced by the alleged procedural error. The judgment should be affirmed in its entirety.