918 P.2d 583

Catherine SMITH, Plaintiff–Appellant,

v.

**MERIDIAN JOINT SCHOOL DISTRICT NO. 2; and, Karen Linder, both individually and as an agent and employee of Meridian Joint School District No. 2, Defendants–Respondents.**

No. 21075.

Supreme Court of Idaho,
Boise, September 1995 Term.

June 3, 1996.

Skinner, Fawcett & Mauk, Boise, for appellant. William L. Mauk argued.

Quane, Smith, Howard & Hull, Boise, for respondent. Brian K. Julian argued.

Chief Justice McDEVITT delivered the opinion of the Court with respect to Parts I, II, IV, V, VI, VII, and VIII B, in which Justices JOHNSON, TROUT, SILAK, and SCHROEDER, joined. Justice JOHNSON delivered the opinion of the Court with respect to Parts III and VIII A, in which Justices TROUT and SILAK, joined. Chief Justice McDEVITT and Justice SCHROEDER dissented from Parts III and VIII A.

This appeal arises from the district court's grant of summary judgment in favor of Respondents, Meridian Joint School District No. 2 (the School District) and Karen Linder, individually and as an agent and employee of the school district.

## I.

### BACKGROUND AND FACTS

The essential facts in this case are undisputed. Smith was employed by the School District for the 1990–1991 and 1991–1992 school years as a certified school counselor. Smith was employed under a non-renewable annual contract and worked at the Lake Hazel Elementary School. Smith was under the supervision and control of John Mikkelson (Mikkelson), principal of Lake Hazel Elementary School, and Karen Linder (Linder), coordinator of counseling for the School District.

According to the School District policy, teachers under an annual contract are to receive a formal written evaluation each semester. Additionally, section 33–514 of the Idaho Code requires that teachers under annual contracts are to receive at least one evaluation prior to the beginning of the second semester of the school year.

Near the end of the first semester, Mikkelson prepared Smith's semi-annual performance evaluation and reviewed the proposed

evaluation with Linder. Linder disagreed with the draft evaluation and proposed that Smith's evaluation be marked down. In mid-December 1991, a survey of the Lake Hazel Elementary counseling program was circulated to the faculty and staff of the Lake Hazel School, from which Linder formed the basis for Smith's revised evaluation. Smith's first semester performance evaluation was completed and given to Smith at the beginning of the second semester, on or about February 5, 1992. The first semester ended in mid-January 1992.

Smith's evaluation showed that Smith's performance was satisfactory in some areas. However, the evaluation indicated that Smith needed to improve her performance in the areas of consulting with staff, referring students to school ancillary personnel and community agencies, establishing and maintaining rapport with others, and communicating with staff members. The evaluation also expressed nine areas where Smith's conduct was improper, including her inappropriate involvement with and referral of children to the Department of Health & Welfare, Child Protective Services (CPS), her inappropriate behavior towards employees of CPS, and her exceeding the boundaries of her counseling duties. Due to Smith's less than satisfactory evaluation, Smith was placed on an "intensified growth plan," under which Smith was to receive a program of "assistance" to resolve the areas of Smith's evaluation where improvement was needed. Smith was given goals that she was to meet under the intensified growth plan. The intensified growth plan was conducted by a growth team, consisting of Mikkelson, Linder, and Darlene Fulwood.

While Smith was under the intensified growth plan, concerns were expressed by Jim Cook, who was the Supervisor of CPS, about Smith's interviewing skills with children referred to the CPS, Smith's activities involving those children, Smith's interference with the investigations of the CPS, and Smith exceeding her authority as a counselor. Smith's growth team discussed these activities with Smith.

On April 14, 1992, Smith was placed on formal probation, pursuant to I.C. Section 33–514, and was given goals similar to those contained in the intensified growth plan. The reasons for Smith's probation were based on Smith's inappropriate conduct; Smith was impeding the investigations of the CPS, was improperly "enmeshed" with students and families, and was potentially contaminating evidence in abuse or neglect cases due to her improper investigative methods. The probation period began on April 15, 1992, and was to continue until the Board of Trustees of the School District (Board of Trustees) determined whether to re-employ Smith.

After being placed on probation, Smith requested to see a written report of the concerns of the CPS, regarding Smith's handling of investigations and referrals of children to the CPS. The written reports from the CPS were received on May 4, 1992, and were given to Smith at a meeting on May 5, 1992. Although Smith did not receive the written statements until May 5, 1992, Smith was aware of the specific concerns of the CPS. Smith had met with Mr. Cook of the CPS on February 19, 1992, to discuss the CPS' concerns about Smith's referral and interviewing techniques, and Smith had received a verbal report from Mr. Cook in early April 1992, about Smith's inappropriate actions in interviewing children prior to referrals to the CPS.

On May 12, 1992, the Board of Trustees approved the recommendation of Smith's probationary team and determined that Smith would not be re-employed for the 1992–1993 school year. The Board of Trustee's reasons for not re-employing Smith were based on Smith's inappropriate conduct in interfacing with CPS, interviewing students referred for crisis intervention, and failure to recognize and respect personal boundaries of students and families in her role as school counselor. The decision not to re-employ Smith was also due to Smith's being inappropriately "enmeshed" with students and families, Smith's contamination of evidence in abuse or neglect cases, and Smith's interference with the investigations of the CPS.

Smith sought an informal review of the Board of Trustees's decision pursuant I.C. Section 33–514. On June 26 and July 7,

1992, the Board of Trustees met to review its decision. At the informal review, Smith was represented by counsel, submitted evidence on her behalf, and was permitted to call witnesses. A quorum of the Board was present and testimony was given under oath subject to cross examination by the Board through the hearing officer. The hearing officer served a dual role as hearing officer and as counsel for the School District during the hearing. On July 7, 1992, the Board rendered its decision upholding its original decision not to re-employ Smith for the 1992–1993 school year.

On July 20, 1992, a Notice of Claim was filed with the School District for breach of contract and tort damages. On August 6, 1992, Smith filed a complaint against the School District and against Karen Linder, both in her individual capacity and as an agent and employee of the School District. Smith sought reinstatement of employment, damages, attorney fees, and costs. Smith sought review of her claims under the Idaho Administrative Procedure Act (APA) and claimed that the School District breached its contract with Smith, terminated Smith in violation of public policy, violated Smith's civil rights under the United States and Idaho Constitutions, and intentionally interfered with Smith's employment contract.

The district court granted the School District's motion for summary judgment and entered its judgment and order on December 17, 1993. The district court concluded as a matter of law that the Idaho Administrative Procedure Act (APA) does not apply to the review of personnel actions taken by school districts, that the School District substantially complied with the requirements of I.C. Section 33–514 and did not breach Smith's contract, that the School District's actions did not constitute a breach of the covenant of good faith and fair dealing, and that since there was no legitimate expectation by Smith that she would be offered a new contract for the next year, there was no protected property interest in continued employment upon which Smith's claimed constitutional rights could attach. The district court reviewed Smith's procedural due process claims and concluded that there was no due process

violation in the review of the Board of Trustees's decision not to re-employ Smith. The court reasoned that the meeting of the Board was an "informal review" and not an adjudicative hearing, and thus the process due Smith in this instance, notice and opportunity to respond, were both present. The court held that there was no viable claim against Linder individually, and that in her representative capacity, Linder was immune from any Section 1983 claim. The court also held that Linder was immune from any claim under the Idaho Tort Claims Act and that the circumstances failed to provide any basis for a claim of third party interference with a contract.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

## II.

### STANDARD OF REVIEW

When faced with an appeal from a lower court's grant of a summary judgment motion, this Court reviews the lower court's ruling by employing the same standard properly applied by the lower court when originally ruling on the motion. *Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 842, 875 P.2d 937, 939 (1994) (quoting *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994)). Summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. *Harris v. Department of Health & Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992). However, if the evidence reveals no disputed issues of material fact, then summary judgment should be granted. *Loomis v. City of*

*Hailey,* 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1991).

 The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). In order to meet its burden, the moving party must challenge in its motion and establish through evidence the absence of any genuine issue of material fact on an element of the nonmoving party's case. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 530, 887 P.2d 1034, 1038 (1994). If the moving party fails to challenge an element or fails to present evidence establishing the absence of a genuine issue of material fact on that element, the burden does not shift to the nonmoving party, and the non-moving party is not required to respond with supporting evidence. *Id.* If the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to come forward with sufficient evidence to create a genuine issue of fact. *Tingley,* 125 Idaho at 90, 867 P.2d at 964. Summary judgment is properly granted in favor of the moving party, when the nonmoving party fails to establish the existence of an element essential to that party's case upon which that party bears the burden of proof at trial. *Thomson,* 126 Idaho at 530–31, 887 P.2d at 1037–38; *Badell v. Beeks,* 115 Idaho 101, 102, 765 P.2d 126, 127 (1988). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). If the non-moving party does not come forward with evidence as provided in I.R.C.P. 56(e), then summary judgment, if appropriate, shall be entered against the party. *Id.; State v. Shama Resources Ltd. Partnership,* 127 Idaho 267, 270, 899 P.2d 977, 980 (1995).

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

### III.

### THERE IS A GENUINE ISSUE OF MATERIAL FACT CONCERNING THE REASONABLENESS OF THE PROBATIONARY PERIOD.

We conclude that the School District did not meet the burden of establishing the absence of a genuine issue of material fact concerning whether Smith's twenty-six day probationary period (April 15, 1992 to May 11, 1992) was "a reasonable period of probation" as required by I.C. § 33–514.

 The materials presented by the School District in support of its motion for summary judgment, did not include any direct evidence concerning the reasonableness of the period of probation. The materials did include the following facts:

1. On April 1, 1992, Smith's principal and counselor coordinator made a review of Smith's progress on the intensified growth plan. They concluded that the intensified growth plan should be extended, but did not recommend probation.

2. Between April 1, 1992 and April 14, 1992, no one in the School District administration talked to Smith about any problems or concerns they were having with Smith's performance during that period. Also, no one talked to Smith nor did Smith learn of any concerns teachers, school personnel, or the Department of Health and Welfare might have had with Smith's performance during that period of time.

3. The principal told Smith the reason for the recommendation of the intensive growth team to place Smith on probation was "[b]ecause of lack of evidence to concur with the concerns expressed by [CPS] and the letter had not been received from Jim Cook."

4. The notice of probation dated April 14, 1992, placing Smith on probation commencing on April 15, 1992, stated that CPS "is in the process of composing a letter reviewed by the Attorney General's Office with their concerns." In the meetings with the probationary team Smith asked about a letter from Jim Cook because she wanted his concerns in writing so she could address the issues he raised.

5. Jim Cook's letter stating CPS's concerns addressed to the School District's coordinator of counseling was dated May 4, 1992. Smith received a copy of Cook's letter on May 5, 1992 at a meeting with the probationary team. The next meeting of the probationary team with Smith was on May 11, 1992. At that time the probationary team informed Smith that they would recommend that her contract with the School District be "non-renewed".

6. On May 11, 1992, six days after Smith received a copy of Cook's letter, the Board of Trustees voted not to reemploy Smith for the following school year. One of the reasons given for this action was "[c]oncerns expressed verbally and in written form by the [CPS] Director and CPS workers regarding instances of [Smith's] impeding their investigations."

■ The requirement of I.C. § 33–514 that Smith received a reasonable period of probation is written into and is part of her contract of employment by the School District. *Robinson v. Joint Sch. Dist. No. 150,* 100 Idaho 263, 265, 596 P.2d 436, 438 (1979). Whether the period of probation was reasonable is a question of fact.

We are required to liberally construe the record in favor of Smith and draw all reasonable inferences and conclusions in her favor. *Friel v. Boise City Housing Auth.,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. *Harris v. Dep't of Health & Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992).

We conclude that reasonable persons could reach differing conclusions concerning the reasonableness of the period of probation in this case, especially in light of the scant six-day period between Smith's receipt of a copy of Cook's written concerns and the decision of the Board of Trustees not to reemploy her for the following year. Because of this genuine issue of material fact, we vacate the summary judgment and remand the case to the trial court for further proceedings.

TROUT and SILAK, JJ., concur.

McDEVITT, C.J., and SCHROEDER, J., dissent.

## IV.

## SMITH WAS NOT TERMINATED IN VIOLATION OF PUBLIC POLICY.

Smith argues on appeal that the decision not to re-employ Smith was the equivalent of Smith being terminated in violation of public policy, due to the School District's failure to provide Smith with either a first or second semester evaluation or with a reasonable probationary period. Smith also argues that the decision to not re-employ Smith was in contravention of public policy because Smith was terminated for complying with I.C. Section 16–1619.

■ Smith was an annual contract employee with a one-year non-renewable contract. At the end of the school year, the Board of Trustees has the authority to decide whether to offer Smith an employment contract for the ensuing year. I.C. Section 33–514; *Webster,* 104 Idaho at 343–44, 659 P.2d at 97–98. An annual contract teacher does not have any expectation of continued employment, since the contract is annual and non-renewable in nature. I.C. Section 33–514. Smith completed her contract term in full, and thus could not have been "terminated." The Board of Trustees decided not to re-employ Smith and did not terminate her. We conclude that there was no violation of public policy when the School District decided not to re-employ Smith.

■ Smith's argument that she was terminated in violation of public policy because she was terminated for complying with I.C. Section 16–1619, is raised for the first time on appeal. Issues presented for the first time on appeal will not be considered by this Court. *Viveros v. Department of Health & Welfare,* 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995).

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

## V.

### THE SCHOOL DISTRICT DID NOT BREACH THE COVENANT OF GOOD FAITH AND FAIR DEALING WHEN IT DECIDED NOT TO RE-EMPLOY SMITH FOR THE 1992–1993 SCHOOL YEAR.

▆▆▆▆▆ The district court properly granted summary judgment on the issue of breach of the covenant of good faith and fair dealing. In *Metcalf v. Intermountain Gas Co.*, the Court recognized an implied-in-law covenant of good faith and fair dealing in employment contracts involving employer-employee relationships (as opposed to principal-agent or independent contractor relationships). *Metcalf*, 116 Idaho 622, 626, 778 P.2d 744, 748 (1989). Following *Metcalf*, a teacher is entitled to contract damages for breach of the covenant of good faith and fair dealing if "[a]ny action by either party ... violates, nullifies or significantly impairs any benefit of the employment contract...." *Id.* at 627, 778 P.2d at 749. A violation of the covenant of good faith and fair dealing is a breach of the contract and does not result in a cause of action separate from the breach of contract claims, nor does it result in separate contract damages unless the damages relate specifically to the breach of the good faith covenant. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 289, 824 P.2d 841, 864 (1991).

▆▆▆▆▆ Although the provisions of I.C. Section 33–514 are included as part of Smith's contract, *Brown*, 127 Idaho at 118, 898 P.2d at 49; *Robinson v. Joint Sch. Dist. No. 150*, 100 Idaho 263, 265, 596 P.2d 436, 438 (1979), Smith has failed to allege that she is entitled to any damages specifically relating to the breach of the covenant of good faith and fair dealing other than those asserted for the breach of contract claim asserted above. We affirm the district court's grant of summary judgment on this issue.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

## VI.

### SMITH IS NOT ENTITLED TO A REVIEW OF THE INFORMAL HEARING UNDER THE IDAHO ADMINISTRATIVE PROCEDURES ACT.

Smith argues that she is entitled to a review of the Board of Trustees's decision not to re-employ her under the Idaho Administrative Procedure Act (APA).[1] Smith asserts that the School District falls within the APA's definition of an "agency" and, as such, the APA governs the review of the School District decision not to re-employ Smith. We disagree.

▆▆▆ The APA defines an "agency" as "each state board, commission, department or officer authorized by law to make rules or to determine contested cases, ..." I.C. Section 67–5201(1). An agency under the APA has rule-making authority if it has the authority to formulate, adopt, amend or repeal a rule. A rule is defined as an "agency statement of general applicability that implements, or prescribes the law or interprets a statute as the statement applies to the general public." I.C. Section 67–5201(7).

▆▆▆ The APA's definition of an agency has two essential elements: (1) that the actor be a state board, commission, department, or officer; and (2) that the actor be authorized by law to make rules or to determine contested cases. I.C. Sections 67–5201(1), (7). The Board of Trustees for the Meridian Joint School District does not meet the definitional requirements for an agency. A school district, once validly organized and in existence, is a "body corporate and politic" and may sue or be sued, may acquire, hold, and convey real and personal property, and may incur debt as provided by law. I.C. Section 33–301. The board of trustees of each school district is authorized by statute to perform administrative and organizational tasks for the school district. I.C. Sections 33–303, –304, –307, –308, –309, –310. While a school district, through its board of trustees may

---

1. Idaho Code Section 67–5201 of the APA was amended in 1992, 1993, and 1995, subsequent to the commencement of this action. The 1986 version of the APA will be used by the Court in the analysis of this case.

work with state boards, commissions, or departments, the school districts and boards of trustees are separate entities and do not constitute a state board, commission, department, or officer under I.C. Section 67–5201.

Smith relies upon *Allen v. Lewis–Clark State College,* 105 Idaho 447, 670 P.2d 854 (1983), to support Smith's claim that Smith is entitled to review of her case under the APA. *Allen* is distinguishable from the present case. In *Allen,* the Court held that the decision of the State Board of Education was reviewable by the Court under the APA. *Id.* at 452, 670 P.2d at 859. Idaho Code Section 33–3102 vests the State Board of Education with the general supervision, government, and control of the Lewis–Clark State College and provides that the State Board of Education shall act as the Board of Trustees for the College. I.C. Section 33–3102. The State Board of Education is a "state board, commission, department, or officer" within the APA's definition of an agency. I.C. Section 67–5201(1). In contrast, school districts and their boards of trustees are not incorporated into the same governing body as the state board.

In cases pre-dating the adoption of the APA, the Court concluded that school districts were agencies of the state for purposes of operating a school district, *Common Sch. Dist. No. 61 v. Twin Falls Bank & Trust Co.,* 50 Idaho 711, 716, 4 P.2d 342, 343 (1931), carrying out its duties of maintaining the schools within its district, *Independent Sch. Dists. v. Common Sch. Dists.,* 56 Idaho 426, 432, 55 P.2d 144, 146 (1936), and establishing tort duties of the school district, *Bullock v. Joint Class "A" Sch. Dist. No. 241,* 75 Idaho 304, 311, 272 P.2d 292, 296 (1954); *Anneker v. Quinn–Robbins Co.,* 80 Idaho 1, 8, 323 P.2d 1073, 1077 (1958). However, since the Idaho legislature's enactment of the APA in 1965, 1965 Sess. Laws, S.B. No. 238, Ch. 273, p. 701, no Idaho cases have held that a school district is an "agency" for purposes of APA review.

In *Bowler v. Board of Trustees,* 101 Idaho 537, 617 P.2d 841 (1980), a teacher with a renewable contract sought review of the school board's decision not to rehire him. At the outset, the Court stated that the case did not involve "an appellate review of the type found in I.C. Section 67–5215 (relating to appeals from administrative agencies)." *Id.* at 540, 617 P.2d at 844. Then, in *Kolp v. Board of Trustees of Butte County Joint Sch. Dist.,* 102 Idaho 320, 629 P.2d 1153 (1981), the Court, citing *Bowler,* held that there is no statutory delineation of judicial appellate review for teacher dismissals made by the board of trustees of a school district. *Id.* at 322, 629 P.2d at 1155. The APA was in existence at the time of these decisions, and the Court did not consider the decisions of the school districts' board of trustees reviewable under the APA. Following *Bowler* and *Kolp,* we conclude that the decision of the Board of Trustees of the School District is not reviewable under the APA.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

## VII.

## THE INFORMAL HEARING TO REVIEW THE DECISION OF THE BOARD OF TRUSTEES WAS NOT IN VIOLATION OF SMITH'S RIGHT TO DUE PROCESS.

Smith argues that the informal review of the Board of Trustees's decision not to re-employ Smith was defective and deprived Smith of her constitutional due process rights. The determination of whether an individual's constitutional due process rights have been violated involves a two-step analysis: (1) whether the threatened interest involves a liberty or property interest under the Fourteenth Amendment of the United States Constitution; and (2) if a property or liberty interest is at stake, the extent to which due process requires that the teacher be given procedural protections. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Loebeck v. Idaho State Bd. of Educ.,* 96 Idaho 459, 460–61, 530 P.2d 1149, 1150–51 (1975).

To have a property interest, an employee must have more than a mere hope or expectation of continued employment. *Harkness v. City of Burley,* 110 Idaho 353, 356, 715 P.2d 1283, 1286 (1986). This Court

has held that a non-tenured teacher does not have any expectation of continued employment. *Loebeck,* 96 Idaho at 461, 530 P.2d at 1151. An annual contract status teacher, without tenure or expectation of continued employment after the expiration of her contract term, does not have a property interest for purposes of constitutional due process. Smith, as an annual contract status employee, had a non-renewable contract, and thus had no expectation nor any right of continued employment under her contract.

Although Smith is not entitled to constitutional due process, state law requires that an employee, who the Board of Trustee has decided not to re-employ, is to be afforded, upon request, an opportunity for an informal review of the decision of the Board. I.C. Section 33–514. On June 26 and on July 7, 1992, an informal review of the Board of Trustees decision was held. Idaho Code Section 33–514 does not contain procedural requirements for a review of the Board of Trustees's decision, but provides only that the employee be given an informal review.

 We hold that the procedural requirements of I.C. Section 33–514 were met. Smith was given notice of her right to an informal hearing, and was given an opportunity to be heard. The hearing took place over a two day period, during which Smith had the opportunity to persuade the School District to re-employ her. Additionally, Smith was represented by counsel, had an opportunity to present arguments and evidence, and called witnesses on her behalf. No adjudicative hearing or formal review is required by I.C. Section 33–514. We conclude that Smith received all process that was due her under the statute.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.

## VIII.

## CONCLUSION

### A.

In conclusion, we hold that there remains a genuine issue of material fact on the breach of contract claim and vacate and remand the district court's grant of summary judgment in favor of the School District.

TROUT and SILAK, JJ., concur.

McDEVITT, C.J., and SCHROEDER, J., dissent.

### B.

We further conclude that Smith was not terminated in violation of public policy and that there was no violation of the covenant of good faith and fair dealing. The informal review is not reviewable under the APA. We conclude that Smith had no constitutional due process rights and that Smith received all process due her under I.C. Section 33–514. We award costs on appeal to Smith. No attorney fees are awarded on appeal.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.