951 P.2d 521

In the Matter of the Enforceability Of IPUC Order Nos. 25454, 25706 And 25787 Consistent With Idaho Supreme Court Opinion No. 61 Dated May 31, 1996.

ROSEBUD ENTERPRISES, INC.,
Complainant–Appellant,

v.

IDAHO PUBLIC UTILITIES
COMMISSION, Respondent
on Appeal,

and

Idaho Power Company, Respondent–
Respondent on Appeal.

No. 23641.

Supreme Court of Idaho
Boise, September 1997 Term.

Nov. 7, 1997.

Rehearing Denied Jan. 15, 1998.

See also 128 Idaho 624, 917 P.2d 781.

Orndorff & Trout, Boise, for appellant. Owen H. Orndorff argued.

Evans, Keane, Boise, for respondent Idaho Power. Barton L. Kline argued.

Alan G. Lance, Attorney General; Scott D. Woodbury, Deputy Attorney General, Boise, for respondent IPUC. Scott D. Woodbury argued.

JOHNSON, Justice.

This public utilities case is a sequel to *Rosebud Enterprises v. Idaho Pub. Util. Comm'n,* 128 Idaho 624, 917 P.2d 781 (1996) (*Rosebud I*). We conclude that the Idaho Public Utilities Commission (IPUC) was correct in refusing to order Idaho Power Company (Idaho Power) to purchase electric capacity and energy from Rosebud Enterprises (Rosebud) at avoided cost rates that have been superseded.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Rosebud is a developer of a small power production plant (the qualified facility) that is

classified as a "qualified facility" under the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 2601 through § 2645. Under PURPA and the rules of the Federal Energy Regulatory Commission (FERC) implementing PURPA, Idaho Power is required to purchase energy and capacity (power) from qualified facilities at the rates of its avoided costs (the avoided cost rates). In 1992, Rosebud requested that IPUC require Idaho Power to provide Rosebud the avoided cost rates for the qualified facility.

In early 1994, Idaho Power applied to IPUC for a change in the methodology for avoided cost rate negotiations for all but very small qualified facilities, which are not at issue in this case. In January 1994, IPUC suspended the avoided cost rates it had previously established. IPUC specifically exempted from this suspension Rosebud's 1992 request for a determination of avoided cost rates for the qualified facility, stating that these rates would be determined independently.

In April 1994, IPUC ordered Idaho Power to follow the established "surrogate avoided resource" avoided cost methodology (the SAR methodology) and to calculate and provide Rosebud with avoided cost rates. In September 1994, IPUC required Idaho Power to recalculate and offer avoided cost rates in accordance with the SAR methodology and adjustments specified in the order. In October 1994, Idaho Power offered to purchase the output of the qualified facility at specified avoided cost rates (the 1994 rates) over a twenty-year period. In November and December 1994, IPUC ruled that Idaho Power's October 1994 offer to purchase the output of the qualified facility complied with IPUC's prior orders. Rosebud appealed to this Court in an attempt to obtain higher avoided cost rates than the 1994 rates.

In December 1994, while its appeal (the *Rosebud I* appeal) was pending, Rosebud declared that the parties were at an impasse and presented Idaho Power with a letter proposing to double the size of the qualified facility. In January 1995, Idaho Power responded to Rosebud's letter, stating that it appeared to be a rejection by counteroffer but that Idaho Power would keep its October 1994 offer open until January 13, 1995, in order to allow Rosebud to reconsider whether to accept the offer.

Rosebud did not respond by January 13, 1995. On January 20, 1995, Rosebud wrote to Idaho Power stating that although the 1994 rates were substantially less than Rosebud believed were appropriate, Rosebud was willing to take a contract with complete terms, conditions, and avoided cost rates to its fuel suppliers, financiers, and vendors to determine whether the contract as a whole would support a project. On January 23, 1995, Idaho Power notified Rosebud that it withdrew its October 1994 offer and left it open for Rosebud to propose a contract with rates, terms, and conditions that Rosebud would accept.

On January 31, 1995, during the pendency of the *Rosebud I* appeal, IPUC determined that Idaho Power's avoided costs for qualified facilities, other than very small ones that are not at issue in this case, would be based on "integrated resource planning" avoided cost methodology (IRP methodology). In September 1995, IPUC set five years as the standard contract length for purchase by utilities of power from qualified facilities.

In May 1996 this Court issued its opinion in *Rosebud I* upholding IPUC's 1994 rulings approving the 1994 rates. 128 Idaho at 632, 917 P.2d at 789. Rosebud then requested a contract from Idaho Power at the 1994 rates. Idaho Power rejected Rosebud's request and requested Rosebud to provide Idaho Power with current information concerning the qualified facility. In August 1996, Rosebud requested IPUC to require Idaho Power to purchase the output of the qualified facility at the 1994 rates. IPUC denied Rosebud's request on the ground that the 1994 rates had been superseded by IPUC's new IRP methodology and shortened five-year contract term. IPUC granted Rosebud's request that IPUC reconsider its decision. On reconsideration, IPUC again denied Rosebud's request that IPUC require Idaho Power to purchase the output of the qualified facility at the 1994 rates. Rosebud appealed.

■ Preliminarily, we consider Rosebud's contention that its right to appeal has been

rendered illusory because following its appeal in *Rosebud I,* IPUC refused to enforce the 1994 rates. We disagree. Certainly Rosebud's appeal in *Rosebud I* would not have been meaningless if it had prevailed. Apparently Rosebud means that its appeal was meaningless because it did not prevail, and it was then precluded from taking advantage of the 1994 rates because IPUC changed the avoided cost methodology. This did not make the appeal meaningless, but merely a risky course of action.

## II.

### *ROSEBUD I* DOES NOT REQUIRE IDAHO POWER TO PURCHASE POWER FROM THE QUALIFIED FACILITY AT THE 1994 RATES.

▌ Rosebud asserts that IPUC violated the mandate of *Rosebud I* by not requiring Idaho Power to purchase power from the qualified facility at the 1994 rates. We disagree.

What Rosebud describes as the direct mandate of the Court in *Rosebud I* is only part of the introduction to the opinion, describing in general terms what IPUC had ordered: "The orders of the IPUC establish an avoided cost rate to be paid by Idaho Power Company (Idaho Power) for the purchase of electric capacity and energy from Rosebud." 128 Idaho at 626, 917 P.2d at 783. This is not a ruling by the Court that Idaho Power is required to purchase power from the qualified facility at the 1994 rates. The Court's ruling in *Rosebud I* was that "[t]he factors considered by the IPUC are consistent with the FERC regulations in determining avoided costs" and that "[t]he record establishes that the IPUC regularly pursued its authority and that its findings are supported by substantial and competent evidence." *Id.* at 632, 917 P.2d at 789. The Court did not mandate that Idaho Power was required to purchase power from the qualified facility at the 1994 rates.

## III.

### IPUC DID NOT VIOLATE I.C. § 61–625.

▌ Rosebud asserts that IPUC's refusal to require Idaho Power to purchase power from the qualified facility at the 1994 rates constitutes a collateral attack on the validity of the IPUC orders approving the 1994 rates in violation of section 61–625 of the Idaho Code. We disagree.

I.C. § 61–625 states: "All orders and decisions of the commission which have become final and conclusive shall not be attacked collaterally." IPUC's refusal to require Idaho Power to purchase the output of the qualified facility at the 1994 rates is not a collateral attack on the IPUC 1994 orders. By its refusal, IPUC did not alter or modify the finality or conclusiveness of its orders approving the 1994 rates, but merely recognized that Idaho Power's avoided costs had subsequently changed and that Rosebud had failed to perfect in a timely fashion its right to the 1994 rates. IPUC characterized Rosebud's request as an attempt to use the appeal process in *Rosebud I* to obtain a continuing, non-binding option to sell power from the qualified facility to Idaho Power at the 1994 rates for the period of the *Rosebud I* appeal. We agree. Because Rosebud never made a legally enforceable obligation to sell power to Idaho Power from the qualified facility, Rosebud never became entitled to the 1994 rates. *A.W. Brown Co. v. Idaho Power Co.,* 121 Idaho 812, 816–19, 828 P.2d 841, 845–48 (1992).

## IV.

### ROSEBUD DID NOT HAVE A LEGALLY ENFORCEABLE OBLIGATION TO SELL POWER TO IDAHO POWER FROM THE QUALIFIED FACILITY.

▌ Rosebud asserts that it had a legally enforceable obligation to sell power to Idaho Power from the qualified facility. We disagree.

Pursuant to the FERC regulations implementing PURPA, 18 C.F.R. § 292.303(a), a utility is required to purchase any energy and capacity which is made available from a qualified facility when the qualified facility has made "a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall ... be based on ...

[t]he avoided cost calculated at the time of delivery or ... at the time the obligation is incurred." 18 C.F.R. § 292.304(d)(2).

In *A.W. Brown Co.*, this Court ruled that IPUC has authority, under state and federal law, to require that before a developer can lock in a certain rate, there must be either a signed contract to sell at that rate or a meritorious complaint alleging that the project is mature and that the developer has attempted and failed to negotiate a contract with the utility; that is, there would be a contract but for the conduct of the utility. 121 Idaho at 816, 828 P.2d at 845. Rosebud has neither signed a contract nor established that Idaho Power will not negotiate with it.

Rosebud argues that federal law preempts IPUC from adopting a signed contract or complaint rule. In *Rosebud Enterprises v. Idaho Pub. Util. Comm'n*, 128 Idaho 609, 917 P.2d 766 (1996) (the *PacifiCorp* case), the Court ruled that "[a]ccording to the FERC, it is up to the State, not [FERC], to determine the specific parameters of individual [qualified facility] power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law." *Id.* at 623–24, 917 P.2d at 780–81 (citations omitted). In the *PacifiCorp* case, the Court noted that "Rosebud is not entitled to a lock-in of an avoided cost rate until it has entered into a legally enforceable and IPUC approved obligation for the delivery of energy and capacity." *Id.* at 620, 917 P.2d at 777.

■ As applied to the present case, Rosebud was not entitled to the 1994 rates until it had legally obligated itself to deliver power. This never occurred. IPUC found that Rosebud represented that it wanted information concerning avoided cost rates in order to assess project viability. There is substantial and competent evidence to support this finding. In a January 1995 letter to Idaho Power, Rosebud made its willingness to commit to "a definite agreement" expressly conditional on its obtaining "concessions from vendors, financiers, and suppliers."

In the *PacifiCorp* case the Court pointed out:

Rosebud appears to have confused PacifiCorp's obligation to purchase power from Rosebud (and consequently Rosebud's right to sell that power to PacifiCorp) pursuant to 18 C.F.R. § 292.303, with the language of 18 C.F.R. [§ ] 292.304(d)(2) which provides that once Rosebud has acted upon that right and incurred a legally enforceable obligation to sell power to PacifiCorp, Rosebud may elect to sell its power at the utility's then-current avoided cost rate. No such obligation has been incurred. Therefore, 18 C.F.R. [§ ] 292.304(d)(2) is inapplicable.

*Id.* at 622, 917 P.2d at 779. Rosebud attempts to distinguish the *PacifiCorp* case from the present case by stating that it is only seeking enforcement of the 1994 rates instead of the avoided cost determination itself. We conclude that Rosebud seeks entitlement to the 1994 rates based on something that it does not have—a legally enforceable obligation to sell power to Idaho Power at the 1994 rates.

## V.

## IPUC DID NOT ACT UNLAWFULLY IN REFUSING TO REQUIRE IDAHO POWER TO SIGN A CONTRACT TO PURCHASE POWER FROM THE QUALIFIED FACILITY AT THE 1994 RATES.

■ Rosebud asserts that even if a legally enforceable obligation is preconditioned on an IPUC approved contract, it was unlawful for IPUC to refuse to require Idaho Power to sign a contract to purchase power from the qualified facility at the 1994 rates. We disagree.

Rosebud mischaracterizes the requirements of IPUC's 1994 orders. Their only effect was to require Idaho Power to offer to purchase power from the qualified facility at the 1994 rates. Idaho Power offered Rosebud these rates in its October 1994 letter, which Rosebud rejected by a counteroffer. Rosebud's contention that Idaho Power's October 1994 offer was incomplete and that the responsibility to make a definitive contract offer rests with Idaho Power overstates the requirements of IPUC's 1994 orders. The 1994 orders only required Idaho Power to

offer Rosebud rates in accordance with the SAR methodology.

## VI.

## IPUC DID NOT VIOLATE ROSEBUD'S RIGHTS TO DUE PROCESS AND FUNDAMENTAL FAIRNESS.

█ Rosebud asserts that IPUC violated Rosebud's rights to due process of law and fundamental fairness by failing to give Rosebud notice and a meaningful opportunity to be heard before the 1994 rates were changed. We disagree.

Rosebud contends that IPUC's 1994 orders gave it a property interest in the form of a legally enforceable obligation it was required to have to be entitled to the 1994 rates. Because Rosebud never made a legally enforceable obligation, as discussed above, it never had a reasonable expectation that IPUC could not change the methodology for determining avoided cost rates. *Cf. Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 722–723, 918 P.2d 583, 591–92 (1996) (requiring more than a mere hope or expectation of continued employment to constitute a property interest). Therefore, it never had a property interest in the 1994 rates, and due process never attached to IPUC's consideration of the change of the 1994 rates.

█ Rosebud contends that IPUC violated notions of fundamental fairness in not requiring Idaho Power to purchase power from the qualified facility at the 1994 rates because Idaho Power did not appeal from IPUC's 1994 orders and asserted in *Rosebud I* that those orders were correct. Rosebud's contention does not, however, accurately characterize Idaho Power's position. Idaho Power does not challenge the correctness of the 1994 orders. Instead, Idaho Power challenges whether the 1994 orders remain enforceable in light of the superseding orders changing the avoided cost methodology from SAR to IRP. There is nothing fundamentally unfair in allowing Idaho Power to rely on what IPUC had the authority to do.

## VII.

## ISSUE PRECLUSION (COLLATERAL ESTOPPEL) DOES NOT PRECLUDE IDAHO POWER FROM LITIGATING THE ISSUE OF APPLICABLE AVOIDED COST RATES.

█ Rosebud asserts that Idaho Power is precluded from relitigating the issue of applicable avoided cost rates by operation of the doctrine of collateral estoppel (issue preclusion). We disagree.

In *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 439, 849 P.2d 107, 112 (1993), the Court restated the five-part test for determining whether issue preclusion (collateral estoppel) applies. In the present case, the applicability of issue preclusion depends on whether the issue of the avoided cost rates that now apply to the purchase by Idaho Power of power from the qualified facility was decided in *Rosebud I*. The issue in *Rosebud I* was whether IPUC's allowance of adjustments to the avoided cost rates established by the 1994 orders was consistent with PURPA, FERC regulations, and prior IPUC orders. Idaho Power has not attempted to relitigate this issue in the present case. The issue here is whether Rosebud is currently entitled to a power purchase contract at 1994 rates. Therefore, Idaho Power is not precluded from litigating the issue of the applicable avoided cost rates in this case.

## VIII.

## CONCLUSION

We affirm IPUC's orders refusing to require Idaho Power to purchase electric capacity and energy of the qualified facility at the 1994 rates.

Because of this disposition, we do not address Rosebud's request to change the on-line date and fuel selection of the facility and Rosebud's request for attorney fees, expenses, and costs.

We award IPUC and Idaho Power their costs on appeal. Neither IPUC nor Idaho Power requested attorney fees.

SILAK, SCHROEDER and WALTERS, JJ., and R. SWANSTROM, J. Pro Tem., concur.